**Shawn M. Lindsay, OSB #020695**
shawn@hbclawyers.com
**Craig R. Berne, OSB #874202**
craig@hbclawyers.com
Harris Berne Christensen LLP
15350 S.W. Sequoia Parkway, Suite 250
Portland, OR 97224
Telephone: (503) 968-1475
Fax: (503) 968-2003

Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **THE INTELLICAD TECHNOLOGY CONSORTIUM,**<br><br>Plaintiff,<br><br>v.<br><br>**SUZHOU GSTARSOFT CO. LTD.,**<br><br>Defendant. | **Case No. 3:19-cv-01963-SI**<br><br>**PLAINTIFF THE INTELLICAD TECHNOLOGY CONSORTIUM'S *AMENDED* BRIEF REGARDING PROPOSED PROTECTIVE ORDER**[1] |

## INTRODUCTION

The parties have spent the last month and a half negotiating the terms of a proper protective order in order to protect their confidential, proprietary, and trade secret information, and to deal with the analysis that will need to be conducted on their source code to help determine whether

[1] This amended brief is being filed by Plaintiff because there was an error in the Exhibit 1 attached to the prior version of this brief, in that certain yellow highlighting was not removed as it should have been. See footnote 2 below.

defendant Suzhou Gstarsoft Co. Ltd. ("Gstar") copied and improperly used the code of Plaintiff The IntelliCAD Technology Consortium ("the ITC"). The parties began working from the model form from the Northern District of California and have negotiated a number of modifications and tweaks. The ITC and Gstar have now reached a point where they cannot agree to close the gap on the remaining issues, which are described in this brief. The ITC believes that the positions staked out by Gstar are for the purpose and will have the effect of slowing down and interfering with the audit to which Gstar agreed in the Commercial Membership Agreement ("CMA") it signed with the ITC and to which Gstar was ordered to submit in the order granted by Judge Michael Mosman in Case No. 3:16-mc-00061-MO.[2]

**DISCUSSION**

I. Relevant Background.

It is important to keep in mind that this is not the typical dispute of two competitors with no previous relationship. The ITC is a consortium of computer aided design ("CAD") software developers who develop and maintain the IntelliCAD software platform ("IntelliCAD"), which is used for developing digital design solutions. Gstar was a member of the ITC, beginning back in the early 2000s, and had entered into a written CMA with the ITC, the most recent of which was dated January 1, 2013. In that CMA, Gstar explicitly agreed in Section 5.4.2 (a)-(b) to submit to audits and inspections of its code. In addition to specifically agreeing to open its code to the ITC, Gstar was ordered to submit to an audit of its source code by Judge Mosman in Case No. 3:16-mc-00061-MO confirming the arbitration award from the 2015 Audit Arbitration. These facts must be considered and taken into account in evaluating Gstar's objections to the language proposed by the ITC relating to the audit procedures.

[2] A version of the proposed protective order showing the ITC's preferred language in blue and Gstar's preferred language in red is attached hereto as Exhibit 1.

II. General Description of the Proposed Audit Procedure.

In order to carry out the audit, the ITC proposed a complete revision of a portion of the model order, which is now located at Section 8 of the proposed protective order. As noted above, the parties have largely agreed on the overall concept, but differ on some small but critical details. Before getting into the disputes, it makes sense to give a brief description of the audit procedure.

First, following the model form, the protective order sets up different classifications of protected material – "Confidential" (which can be shown without limitation to parties, House Counsel, and retained Experts) and "Highly Confidential – Attorney Eyes Only" and "Highly Confidential – Source Code" (which are functionally the same and that cannot generally be shown to parties or House Counsel, and can only be shown to or seen by retained Experts after going through the approval process set forth in Section 7.4). As to source code, the proposed protective order establishes the following procedure: (1) the Producing Party allows the Receiving Party to view the Producing Party's source code repository by video and the Receiving Party chooses several revisions of the software for further analysis; (2) the Receiving Party will verify that the chosen revisions can build into an executable program; (3) the Producing Party will generate authentication check values (an MD5 hash value) to further verify the revisions; (4) certain comparison tools will be loaded onto a "source code computer" at the office(s) of Gstar's counsel; (5) the Producing Party will load the chosen revisions onto the source code computer; (6) the Receiving Party will load versions of its own software that it wishes to compare onto the same source code computer; (7) when not in use, the respective versions of each party's source code will be held on the source code computer in encrypted container files not accessible to the opposing parties; (8) the source code computer will be disconnected from the internet or any outside access; (9) the Receiving Party will then remove irrelevant material from the respective versions of source

code and share with the Producing Party the removed material; (10) the Receiving Party may then generate files showing the results of the comparisons; (11) the Producing Party will then produce to the Receiving Party the comparison results files; and (12) at the end of the case, the results files and all the code on the source code computer will be destroyed. There is agreement between the parties on all these steps, but disagreement on some of the details, described below.

III. Disputes Between the Parties.

The first dispute concerns the treatment of "revision histories" and the "source code repository," as addressed in Sections 2.8 and 8(c)(1). Gstar wishes to follow the model order and include "revision histories" in the definition of "Highly Confidential – Source Code" in Section 2.8, and it wishes to treat the metadata in the source code repository as "Highly Confidential – Source Code" that cannot be shown to the parties.[3] The first part of the audit procedure outlined above (Section 8(c)(1)), however, involves looking at the source code repository for the history of changes and revisions to the code to choose which revisions to focus upon for comparison. There might be thousands or even hundreds of thousands of revisions, and the parties have agreed that only a limited number will be chosen for comparison. No one outside of David Lorenzo, the President of the ITC, has the knowledge to be able to look at Gstar's source code repository and decide which revisions are most likely to contain proof of copying by Gstar. The revision history log does not show the source code itself, but rather lists the author of a particular revision, the date and time of the changes, the names of the files or folders that were changed in the revision, and comments that were inserted about the revision. An entry in the revision history log may show that

[3] The president of the ITC, David Lorenzo, has prepared a short two-minute video to show what a source code repository looks like on the screen, in order to help understand how it would be used and what it does (and does not) reveal. The ITC would be happy to provide the link to the video to the Court and Gstar's counsel as long as the parties agree that the video itself will be treated as "Confidential" under the terms of the Protective Order that will be signed by the Court, and that showing the video in the context of this proceeding does not waive or invalidate any of the protections applicable to the ITC's source code repository or source code.

the critical revision of Gstar's product, GstarCAD 8, was only worked on by one or two developers over a matter of weeks; given that it took 500 man-years to develop the current version of IntelliCAD, such information would help disprove Gstar's claims that it independently developed its product over several years. The ITC must be able to show Gstar's metadata in the source code repository to Mr. Lorenzo in order to intelligently choose the particular revisions that will be further analyzed.

The next dispute concerns the definition of "Outside Counsel of Record" in Section 2.11, and in particular, Gstar's insertion of material to limit and interfere with the involvement of one of the outside attorneys for the ITC, Shawn M. Lindsay. Mr. Lindsay is a partner with outside counsel for the ITC, Harris Berne Christensen LLP, and has never been an employee of the ITC. Gstar wants to add language to Section 2.11 that will treat any outside attorney who is "involved in competitive decision-making" as "House Counsel" rather than "Outside Counsel of Record" (and therefore unable to see "Highly Confidential – Attorney Eyes Only" or "Highly Confidential – Source Code" materials). The ITC is fine with that language being included if additional language is also added to clarify Mr. Lindsay's role, since Gstar's addition is clearly aimed at him.

While Mr. Lindsay has been outside counsel to the ITC for many years and has given it *legal* advice on a number of matters, he does not make, and has not made, competitive decisions for the ITC, and is not and has not been involved in decisions as to pricing, marketing, application features, product design, budgeting, code development, etc. The ITC has proposed inserting language to this effect and clarifying that Mr. Lindsay is therefore Outside Counsel of Record (who can see Highly Confidential information) and not House Counsel (who is barred from seeing Highly Confidential information). Gstar proposes language that kicks the can down the road (presumably slowing down and interfering with later trial preparation) and that will interfere with

Mr. Lindsay's ability to effectively assist his law partner and co-counsel, Craig R. Berne. While Gstar may cite to *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992) and *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984), both those cases and a number of other cases deal with *in-house counsel* and do not involve situations where the producing party expressly agreed in advance to audits and inspections by the receiving party. In that respect, Mr. Lindsay is much closer to counsel, even in-house counsel, that were found to have not been "involved in competitive decision-making" and thus not barred from access to "attorney eyes only" information. *See, e.g.*, *Barnes & Noble, Inc. v. LSI Corp.*, U.S. District Court for the Northern District of California Case No. C 11-02709 EMC (LB), 2012 U.S. Dist. LEXIS 23103, *9-*14 (N.D. Cal. February 23, 2012) (in-house attorneys not barred from seeing "attorney eyes only" information when they manage the company's litigation and offer legal advice but do not offer advice as to "business strategy, pricing, marketing strategies, product design and development, or competitive analysis" or participate in competitive decisions based on such factors; involvement in pre-litigation negotiations does not alter that conclusion); *see also Koninklijke Philips N.V. v. Iguzzini Lighting USA, Ltd.*, 311 F.R.D. 80, 83-85 (S.D.N.Y. 2015); *Live Eyewear v. Biohacked, Inc.*, U.S. District Court for the Central District of California Case No. CV 19-461-FMO (PLAx), 2019 U.S. Dist. LEXIS 231459, *9-*30 (C.D. Cal. July 23, 2019); *ActiveVideo Networks, Inc. v. Verizon Communs., Inc.*, 274 F.R.D. 576, 580-584 (E.D. Va. 2010). Mr. Lindsay needs to be allowed to see Highly Confidential information because his background and years of advising the ITC and helping craft the CMA will be invaluable and his assistance will be obstructed if he is blocked off from viewing the most important evidence in the case.

The parties disagree about Section 8(c)(2), which the process of verifying the build of the selected revisions. Gstar believes that ITC should be the party to build the executable program,

and that ITC should do this remotely from Oregon to a computer located in Beijing, China. Gstar would be better able to build its own software program and should be doing this on the source code computer located in its attorney's office in Portland, Oregon. If Gstar believes that ITC could perform that function remotely from Oregon, then Gstar is certainly capable of performing that function remotely from China. Furthermore, Gstar possesses the knowledge of its own build environment and how its own code is built – information and experience that the ITC is lacking.

Another dispute concerns the comparison tools used to analyze the parties' source code, as described in Section 8(c)(5)(C) and 8(c)(5)(D). The ITC's expert in connection with the source code audit is Barbara A. Frederiksen-Cross and her colleagues at JurisLogic, LLC. JurisLogic, which has conducted numerous analyses and comparisons of software products in similar cases, has used both commercially available comparison tools and has also developed its own proprietary tools designed to overcome common methods of masking software copying and misappropriation. The choice of the specific tools to be used depends on the type of machine used for the source code computer and the results along the way, and the choice cannot be made and unalterably locked in before the analysis is performed. The ITC believes that it should be allowed to use whatever tools it chooses and should be allowed to install those tools on the source code computer itself, to ensure the trade secret nature and security of those tools. The results of the analysis, of course, will be shared and available to both parties. Gstar's version of the protective order, however, requires giving the tools to Gstar days in advance of the analysis so that Gstar can evaluate and decide what tools will actually be loaded onto the source code computer, with Gstar performing the installation. This is a blatant attempt to interfere with the ITC's analysis and search for copied code. There are many ways that copied code can be disguised and hidden from basic commercially available

comparison tools, but Gstar will not be able to cover up any wrongdoing if the ITC is allowed to choose and install its own tools, as it deems appropriate.

The final dispute concerns the production of the analysis and comparison results. As noted in Sections 8(c)(6) and 8(d), Gstar wants all the results to be produced in paper Bates-stamped format. This may involve thousands or even tens of thousands of pages of paper, which is wasteful, expensive, unwieldy, and impossible to secure while in transit. The ITC, on the other hand, believes the results can and should be produced electronically in searchable, encrypted PDF format, which is less expensive, less wasteful, easier to use in socially-distanced remote depositions, and also more secure, since the results would be produced on encrypted thumb drives, DVDs, or hard drives. In this day and age, it makes no sense to be producing boxes and boxes of paper and forcing people to spend hundreds of hours combing through such boxes when the information could be produced more quickly and cheaply and in a more usable and secure form.

///

///

///

///

///

///

**CONCLUSION**

The parties have worked professionally and cooperatively to come up with a protective order and an audit procedure that should provide more than adequate protection to Gstar while still enabling the ITC to answer the fundamental question of whether GstarCAD 8 and its subsequent derivatives were improperly based on copying and misappropriation of the ITC's proprietary IntelliCAD code. This procedure is essential to comply with Gstar's duties under the CMA and Judge Mosman's order confirming the prior Audit Arbitration award. On the points where the parties disagree, however, the language on which Gstar insists would render the process more time-consuming, more difficult, less trustworthy, and less secure for both parties. Accordingly, the Court should enter the protective order as offered by the ITC and reject Gstar's modifications to that proposal.

DATED this 29th day of July 2020

**HARRIS BERNE CHRISTENSEN LLP**

By: /s/ Craig R. Berne
Shawn M. Lindsay, OSB #020695
Craig R. Berne, OSB #874202
Of Attorneys for Plaintiff