**Julia E. Markley**, OSB No. 000791
JMarkley@perkinscoie.com
**Sasha Petrova**, OSB No. 154008
SPetrova@perkinscoie.com
**Kyle Ryan Canavera** (*Pro Hac Vice*)
KCanavera@perkinscoie.com
**William Matthew Pierce** (*Pro Hac Vice*)
WPierce@perkinscoie.com
**PERKINS COIE LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

*Attorneys for Defendant*
*Suzhou Gstarsoft Co., Ltd.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

THE INTELLICAD TECHNOLOGY CONSORTIUM,

Plaintiff,

v.

SUZHOU GSTARSOFT CO. LTD.,

Defendant.

No. 3:19-cv-01963-SI

**MOTION TO RECONSIDER PROTECTIVE ORDER**

By Defendant Suzhou Gstarsoft Co., Ltd.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## TABLE OF CONTENTS


**Page**

LOCAL RULE 7-1 CERTIFICATION ........ 1
MOTION ........ 1
MEMORANDUM ........ 2
- I. INTRODUCTION ........ 2
- II. GOVERNING STANDARDS ........ 3
- III. ARGUMENT ........ 4
  - A. Gstar's Revision History Is a Trade Secret Ordinarily Protected from Disclosure to Competitive Decisionmakers Like ITC President Dave Lorenzo ........ 4
  - B. ITC Has Not Met and Cannot Meet Its Burden to Show that Disclosure of Gstar's Revision History to ITC President Dave Lorenzo Is Warranted ........ 5
    - 1. Proving ITC's Case Cannot Require Dave Lorenzo to See Gstar's Revision History When ITC's Source-Code-Analysis Experts Will See the Revision History Anyway ........ 5
    - 2. ITC Has Not Shown and Cannot Show that the CMA Audit and Inspection Provisions Should Affect Discovery in this Tort Case ........ 6
      - a. The Parties Could Have Agreed that Audit and Inspection Provisions Would Apply in Actions and Suits or Beyond the Contract Itself, But They Did Not ........ 6
      - b. Applying the CMA's Audit Provisions in this Tort Case Gives ITC the CMA's Benefits Without Its Limitations ........ 6
    - 3. The CMA's inspection and audit provision does not allow ITC's competitive decisionmakers to access Gstar's revision history long after the contract has expired ........ 8
  - C. Alternatively, at a Minimum, Mr. Lorenzo Should Be Prohibited from Accessing Gstar Revision History after May 18, 2018. ........ 9
- IV. CONCLUSION AND RELIEF REQUESTED ........ 10




**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Andersen-Swiderski v. Kaiser Permanente S. Cali. Optometric Ass'n*,
813 Fed. Appx. 267 (9th Cir. 2020)........................................6

*Brown Bag Software v. Symantec Corp.*,
960 F.2d 1465 (9th Cir. 1992)........................................4

*Care Med. Equip., Inc. v. Baldwin*,
15 P.3d 561 (Or. 2000)........................................8

*Intellicad Tech. Consortium v. Suzhou Gstarsoft Co. Ltd.*,
No. 1:2020-mc-00013 (E.D. Va.)........................................8

*Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*,
242 F.R.D. 552 (C.D. Cal. 2007)........................................3

*Oregon Sch. Employees Ass'n, Chapter 89 v. Rainier Sch. Dist. No. 13*,
808 P.2d 83 (Or. 1991)........................................9

*Telebuyer, LLC v. Amazon.com, Inc.*,
13-CV-1677, 2014 WL 5804334 (W.D. Wash., July 7, 2014)........................................4

*Vesta Corp. v. Amdocs Mgmt. Ltd.*,
2017 WL 714354, No. 3:14-cv-01142 (D. Or. Feb. 21, 2017)........................................3, 5

*W. Prop. Holdings, LLC v. Aequitas Capital Mgmt., Inc.*,
392 P.3d 770 (Or. Ct. App. 2017)........................................9

*Yogman v. Parrott*,
937 P.2d 1019 (Or. 1997)........................................7

**STATUTES**

ORS 646.461........................................7

ORS 646.465........................................7



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## LOCAL RULE 7-1 CERTIFICATION

Counsel for Defendant Suzhou Gstarsoft Co., Ltd. ("Gstar") certify that they conferred by telephone in good faith with counsel for Plaintiff The IntelliCAD Technology Consortium ("ITC") on this motion but could not resolve the matter.

## MOTION

Consistent with the Court's August 28 and September 11 emails, Gstar moves for reconsideration of the Protective Order entered in this case, Dkt. 49 ("Protective Order"). Gstar requests that the Court amend the Protective Order to classify source code revision history as "Highly Confidential – Source Code" by making the edits to Sections 2.8 and 8.3 as follows[1]:

> 2.8 "HIGHLY CONFIDENTIAL – SOURCE CODE Information or Items" means extremely sensitive "Confidential Information or Items" representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.
>
> * * * * *
>
> 8.3 Unless otherwise ordered by this Court, production of source code shall proceed as follows:
>
> (a) Source Code Selection. The Producing Party shall make available for remote viewing by the Receiving Party the software repository or repositories for the Producing Party's applicable software program, but not the source code or other content of the files managed by the software repository. This viewing will be done via video conference and conducted in English. ~~With the exception of metadata that includes dates when changes were made, what programs or files were changed, who made the changes, and any associated check-in comments, t~~The software repository will be treated as "HIGHLY CONFIDENTIAL – SOURCE CODE" information, and viewing thereof will be limited as described elsewhere herein. The Receiving Party may identify revisions of the software from the software repository for further

[1] Gstar's proposed additions are underlined, and Gstar's proposed deletions are struck out.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

> analysis and ~~the~~ metadata that includes dates when changes were made, what programs or files were changed, who made the changes, and any associated check in comments[2] ~~mentioned above~~ will be produced.

**MEMORANDUM**

## I. INTRODUCTION

The Protective Order entered by this Court accepts ITC's proposed edits to exclude source code revision history from classification as "Highly Confidential – Source Code," thereby allowing disclosure of revision history to ITC's President, Dave Lorenzo, in addition to ITC's experts and attorneys. Gstar can find no other case in which a court has allowed a competitive decisionmaker from the opposing party to review either revision history or source code. Gstar respectfully moves the Court to reconsider the Protective Order on that single point.

As the Court recognized at oral argument, revision history—a log of every change ever made to source code, complete with explanatory comments—is generally recognized as tantamount to source code and treated as such by the Northern District of California's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets ("Model Order"). Gstar's revision history is no less revelatory of Gstar's source code, and Gstar seeks only to keep it out of the hands of decisionmakers at its competitor ITC. Gstar's request would not impede ITC's ability to make its case because ITC's experts and attorneys could still review Gstar's revision history.

ITC bears the burden of justifying the disclosure of Gstar's trade secrets to ITC's president, and ITC has not met that burden here. ITC does not need Mr. Lorenzo to access Gstar's revision history to try and prove its case. It is implausible that ITC's source-code-analysis experts require *contemporaneous* guidance from Mr. Lorenzo in order to capably

---

[2] While Gstar maintains its objection to producing the metadata, it does not re-raise that issue in this motion, and it inserts the underlined language only to define the referenced "metadata" now that it can no longer be described as "metadata mentioned above."



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

perform their hired role of reviewing Gstar's source code and revision history. And ITC has not presented any legal basis why the parties' expired Commercial Membership Agreement ("CMA") makes any difference, nor could it. The CMA's audit provisions cannot inform the scope of discovery in a tort case, where the procedures, subject matter, and remedies are all different than they would be in a contract-enforcement action. More significantly, the parties never contracted for ITC's audit provisions to apply in a tort case five years after the CMA expired. And even if those CMA provisions could apply, they would not support giving Mr. Lorenzo access to Gstar's entire revision history because the last-surviving CMA provisions expired on May 18, 2018.

Gstar respectfully requests that the Court revise the Protective Order to allow only ITC's experts and attorneys access to Gstar's revision history. ITC's case will not suffer, and Gstar's confidentiality will suffer no more than necessary.

## II. GOVERNING STANDARDS

Motions to reconsider are ordinarily appropriate only in limited circumstances, but the Court instructed Gstar not to brief the motion-to-reconsider standard because the Court had invited a motion for reconsideration.

The Court may, for good cause, issue a protective order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specific way." Fed. R. Civ. P. 26(c)(1)(G). Once the party seeking the protective order shows that the information at issue is a trade secret or confidential and that disclosure would be harmful, the burden shifts to the party seeking disclosure to show that it is warranted. *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 2017 WL 714354, No. 3:14-cv-01142, at *2 (D. Or. Feb. 21, 2017); *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007).



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## III. ARGUMENT

### A. Gstar's Revision History Is a Trade Secret Ordinarily Protected from Disclosure to Competitive Decisionmakers Like ITC President Dave Lorenzo

As briefed in both of Gstar's briefs before the Protective Order hearing, Dkt. 42 at 3-4; Dkt. 45 at 2-3, revision history contains information tantamount to source code, and has accordingly been treated the same as source code by the Model Order, § 2.9, and, as far as Gstar can tell, by every court to issue a Protective Order that contemplates source code. *See, e.g.*, *Telebuyer, LLC v. Amazon.com, Inc.*, 13-CV-1677, 2014 WL 5804334, at *3 (W.D. Wash., July 7, 2014) (rejecting party's request to narrow Model Order definition of Highly Confidential Source Code). This Court acknowledged as much at the hearing, explaining that, if it held that revision history should be excluded from treatment as source code, it would take the chance of being the first court in history to do so. Decl. of K. Canavera in Supp. of Gstar's Mot. to Reconsider Protective Order ("Canavera Decl.") ¶ 2, Ex. 1 (Transcript of August 10, 2020, Proceedings) at 10-11. When the Court asked ITC at the hearing for case law supporting ITC's position that revision history does not justify treatment as source code, ITC's counsel said, "I have not found any case law that says that." *Id.* at 8-9.

Equally uncontroversial is that Dave Lorenzo—ITC's president—would not normally be allowed to see a competitor's revision history in a trade secret case. The touchstone for whether a person is allowed to see another party's highly confidential material is whether they are involved in "competitive decisionmaking." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). As president of ITC, Dave Lorenzo is undoubtedly involved in competitive decision-making. *See* Canavera Decl. ¶ 3, Ex. 2 (D. Lorenzo LinkedIn Bio showing he has served as ITC President since October 2015 and worked as ITC's Software Development Director from March 2004-October 2015); *see also* Canavera Decl. ¶ 4, Ex. 3 (S. Lindsay deposition transcript, 59:9-23, 60:19-25, explaining D. Lorenzo participates in deciding whether to admit new members and deciding whether to enforce agreements and take legal actions). At



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

the hearing, the Court observed that, in a hypothetical without the CMA, it "can't imagine a scenario where the primary developer or supervisor of developers in [one company] would be able to look at such things as the revision histories or the meta data in the source code of the second competitor." Canavera Decl. ¶ 2, Ex. 1 at 9.

Accordingly, Gstar has established good cause that a trade secret—its revision history—should be shielded from disclosure to Mr. Lorenzo, and the burden shifts to ITC to show disclosure is warranted. *Vesta Corp.*, 2017 WL 714354, at *2.

## B. ITC Has Not Met and Cannot Meet Its Burden to Show that Disclosure of Gstar's Revision History to ITC President Dave Lorenzo Is Warranted

### 1. Proving ITC's Case Cannot Require Dave Lorenzo to See Gstar's Revision History When ITC's Source-Code-Analysis Experts Will See the Revision History Anyway

ITC has not provided any support for its claim that only Mr. Lorenzo can adequately review Gstar's revision history, Dkt. 41, at 4, nor could it. As discussed above, principal programmers for one company are not typically allowed to see their competitor's source code or revision history during trade secret cases. This is because experts, like ITC's hired source-code-analysis experts, are capable of reviewing source code and revision history in trade secret cases themselves. *See* Canavera Decl. ¶ 5, Ex. 4 (C. Berne email to K. Canavera dated Sept. 4, 2020 attaching experts' bios). Presumably ITC's experts have done so on the other tens of engagements identified for just the last five years, given that there appears to be no precedent for the allowances provided in the Protective Order. ITC suggests that the revision history here is unique because it involved 56,000 revisions in three years, Dkt. 46 at 3, yet ITC has identified no reason why such a count is anomalous in the software industry. In short, ITC's experts' access to the revision history will allow ITC the opportunity to prove its case, and there is no valid reason that ITC needs Mr. Lorenzo to see the revision history, too.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

### 2. ITC Has Not Shown and Cannot Show that the CMA Audit and Inspection Provisions Should Affect Discovery in this Tort Case

#### a. The Parties Could Have Agreed that Audit and Inspection Provisions Would Apply in Actions and Suits or Beyond the Contract Itself, But They Did Not

Had the parties intended that the CMA's audit and inspection provisions 1) govern discovery 2) in all types of actions 3) five years after the CMA expired, they could have said so. None of the CMA's audit/inspection provisions—Sections 3.5 and 5.4.2(a) and (b)—mention discovery or actions or suits of any kind, or purport to have any effect more than three years after the termination of the CMA. *See* Canavera Decl. ¶ 6, Ex. 5 (CMA). Yet, as this Court has already found, the CMA specifically provides that certain other CMA provisions do apply in "[a]ll disputes, controversies, claims, and defenses arising out of, relating to, or involving this Agreement, whether involving theories of tort, contract, or violation of statutory laws." Opinion and Order Denying Mot. to Dismiss, Dkt. 30 at 13 (quoting CMA § 9.5). So the parties "knew how" to specify that provisions apply to certain actions, parts of actions, and types of actions, but they "did not do so" for the audit and inspection provisions. *Andersen-Swiderski v. Kaiser Permanente S. Cali. Optometric Ass'n*, 813 Fed. Appx. 267, 269 (9th Cir. 2020) (concluding that drafters of collective bargaining agreement "knew how to expressly require integration with state benefits and conspicuously did not do so"). Indeed, Gstar searched for, and could not locate, any case in which a previous contract was applied to expand the scope of discovery in an intellectual property tort case.

#### b. Applying the CMA's Audit Provisions in this Tort Case Gives ITC the CMA's Benefits Without Its Limitations

Applying the CMA audit provisions in this case gives ITC more than it bargained for and takes from Gstar more than it agreed to give. The inequities of applying those provisions to a tort case demonstrate why this contract cannot be enforced piecemeal in a tort action, but must instead be enforced in a contract action.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Although the parties agreed in the CMA that ITC could audit Gstar for a period of time, they did not do so in a vacuum. The audit provisions are in the context of the broader CMA. *See Yogman v. Parrott*, 937 P.2d 1019, 1021 (Or. 1997) (courts examine text of contract provisions "in the context of the document as a whole"). For example, the CMA contemplates an inspection, but that inspection would be on Gstar's "premises" and thus would not require Gstar to send its source code out of the country. Canavera Decl. ¶ 6, Ex. 5 at 9, CMA § 5.4.2(a). And if the audit reveals use of unlicensed ITC materials, the CMA specifies that a "minimum penalty of $100,000" per year shall be assessed. *Id.* § 5.4.2(b). Finally, the CMA spells out which uses of ITC's software would be prohibited, *id.* at 6, CMA § 2.3.5, while leaving other, uncovered uses permitted.

To read the CMA audit provisions to allow Dave Lorenzo to see Gstar's revision history in this case is to pull one aspect of one CMA provision out of the context of the broader CMA and to drop it into the different context of tort litigation. So where the CMA would limit an inspection to Gstar's premises, in this case Gstar will have to send its source code out of China for the first time. And where enforcement of the CMA would involve contractual remedies with a specified penalty, in this case ITC seeks tort remedies that could be far different. *See* ORS 646.465 (providing that trade secret misappropriation damages include reasonable royalty and potential for punitive damages). Last, the subjects for which inspection is allowed under the CMA were specifically spelled out and are necessarily not the same as the subjects of trade secret and copyright laws about which ITC now seeks discovery. For example, the CMA covers the use of any ITC code, but in a trade secret case, the only protected subject matter is that which "[d]erives independent economic value … from not being generally known." ORS 646.461.

These differences would give ITC the best aspect of the CMA audit provisions, unhinged from all other limitations of a contract case, thus demonstrating why the CMA audit provisions should be available to ITC only in a contract action or a case to enforce the ITC's 2016 judgment



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

for an audit and damages award, as ITC is currently pursuing in Virginia. *Intellicad Tech. Consortium v. Suzhou Gstarsoft Co. Ltd.*, No. 1:2020-mc-00013 (E.D. Va.).

### 3. The CMA's inspection and audit provision does not allow ITC's competitive decisionmakers to access Gstar's revision history long after the contract has expired

Even if the CMA could inform the scope of discovery in this tort lawsuit, any effect that the CMA has on the protective order at issue must be consistent with the intention of the parties as determined by the wording of the contract. *See Care Med. Equip., Inc. v. Baldwin*, 15 P.3d 561, 563 (Or. 2000) ("The court must interpret the wording of a contract to effectuate the intentions of the parties, as those intentions can be determined from that wording and other relevant circumstances."). Here, based on the plain text of the CMA, Gstar did not agree and therefore could not have expected that ITC and its competitive decisionmakers would have ongoing access to Gstar's premises and records—even those records that it could have inspected before May 18, 2018.

ITC's inspection right under the CMA was not everlasting. Rather, it expired on May 18, 2018—three years after the CMA was terminated:

> **a) Inspection.** Upon the termination of Commercial Member's membership, *for a period of three years effective on the date of the termination*, Commercial Member will make its premises and needed records available for inspection by the Consortium, or its authorized agents for purposes of verifying and auditing Commercial Member's compliance with the terms of this Agreement and the Rules.

Canavera Decl. ¶ 6, Ex. 5 at 9, CMA § 5.4.2(a) (emphasis added). The plain text of Section 5.4.2(a) provides that Gstar had an obligation, and ITC had a right, that existed "for a period of three years effective on the date of the termination." *Id.* The absence of any language indicating a perpetual right is conspicuous; the parties could have easily contracted to make Gstar's obligation unending by simply omitting the italicized language above. Alternatively, the parties could have contracted for a longer time period for inspection. They did neither. Instead, they



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

unambiguously limited Gstar's obligation to make its premises and records available for inspection by ITC to three years. *See Oregon Sch. Employees Ass'n, Chapter 89 v. Rainier Sch. Dist. No. 13*, 808 P.2d 83, 87 (Or. 1991) ("Unambiguous contracts must be enforced according to their terms."). Upon the expiration of that time period on May 18, 2018, Gstar could reasonably expect that the window for such an inspection—and ITC's right to insist on such an inspection—had closed, as did any obligation on Gstar's part to maintain such records or make them available to ITC.[3] *W. Prop. Holdings, LLC v. Aequitas Capital Mgmt., Inc.*, 392 P.3d 770, 776 (Or. Ct. App. 2017) (observing that "the reasonable contractual expectations of the parties are shown by the express terms of the contract").

Thus, the CMA does not allow ITC to now inspect even those records that it could have inspected before May 18, 2018. To conclude otherwise would contradict the parties' express agreement in the contract and would re-animate Gstar's obligations under a contract that it reasonably believed to be long expired.

### C. Alternatively, at a Minimum, Mr. Lorenzo Should Be Prohibited from Accessing Gstar Revision History after May 18, 2018.

To the extent this Court disagrees, at a minimum, Mr. Lorenzo's access to revision history under Section 5.4.2(a) should be limited to revision history before May 18, 2018.

This Court recognized that the CMA terminated on May 18, 2015, and that Section 5.4.2(a) required Gstar to "make its premises and needed records available for inspection" by ITC "for a period of three years effective on the date of the termination"—i.e., until May 18, 2018. *See* Canavera Decl. ¶ 2, Ex. 1 at 11-12. Accordingly, this Court observed at oral argument that it was tentatively inclined to allow Mr. Lorenzo to access "only those revision histories entered on or before May 18th, 2018." *Id.* at 15; *see also id.* at 13-14 (stating that the

[3] Whether or not Gstar had a reasonable expectation of privacy in such records during the three years following termination is irrelevant to the question of whether Gstar is entitled to assume, under the plain terms of its contract with ITC, that ITC could not insist on such an inspection in 2020.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Court was "inclined to agree with Gstar's position . . . that Mr. Lorenzo may not look at any revision history after May 18, 2018"). However, the Protective Order imposes no temporal limitation on Mr. Lorenzo's ability to access revision history.

Specifically, revision history and metadata is absent from the definition of "Highly Confidential – Source Code" found in Section 2.8, Dkt. 49 at 3, and pursuant to Section 8.3(a), certain "metadata" has been carved out from the type of information that is afforded "Highly Confidential – Source Code" protection, *id.* at 16. The effect is that ITC and Mr. Lorenzo will have access to all of Gstar's revision history, without any temporal limitation. This is contrary to the plain terms of Section 5.4.2(a) of the CMA, which, at most, contemplates access to Gstar's records for three years after termination of the CMA.

As set out above, this Court should decline to interpret any standalone provisions of the CMA broadly to allow ITC's chief decisionmaker to access Gstar's trade secrets. To the extent this Court disagrees, access to such records should be limited to revision histories before May 18, 2018, pursuant to the express terms of Section 5.4.2(a).

## IV. CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, Gstar respectfully moves the Court to reconsider its decision and amend the Protective Order consistent with the language set out in the Motion, above.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

DATED: September 21, 2020

**PERKINS COIE LLP**

By: *s/ Kyle R. Canavera*

**Julia E. Markley**, OSB No. 000791
JMarkley@perkinscoie.com
**Sasha Petrova**, OSB No. 154008
SPetrova@perkinscoie.com
**Kyle Ryan Canavera** (*Pro Hac Vice*)
KCanavera@perkinscoie.com
**William Matthew Pierce** (*Pro Hac Vice*)
WPierce@perkinscoie.com
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

*Attorneys for Defendant*
*Suzhou Gstarsoft Co., Ltd.*