**Shawn M. Lindsay, OSB #020695**
shawn@hbclawyers.com
**Craig R. Berne, OSB #874202**
craig@hbclawyers.com
Harris Berne Christensen LLP
15350 S.W. Sequoia Parkway, Suite 250
Portland, OR 97224
Telephone: (503) 968-1475
Fax: (503) 968-2003

Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**THE INTELLICAD TECHNOLOGY CONSORTIUM,**

Plaintiff,

v.

**SUZHOU GSTARSOFT CO. LTD.,**

Defendant.

**Case No. 3:19-cv-01963-SI**

**PLAINTIFF THE INTELLICAD TECHNOLOGY CONSORTIUM'S OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER PROTECTIVE ORDER**

## INTRODUCTION

After extensive meetings and conferrals between the parties – both telephonic and in writing – and after complete briefing and oral arguments, the Court entered a Protective Order in this case (Doc. No. 49) that, among other things, allows the President of Plaintiff The IntelliCAD Technology Consortium ("the ITC"), David Lorenzo, to view the metadata and comments in the revision history for the source code of Defendant Suzhou Gstarsoft Co. Ltd. ("Gstar"). This review

is part of the audit process set forth in the Protective Order, which is essential to the ITC's ability to prove that the source code for Gstar's product, GstarCAD 8, is the result of misappropriation of the ITC's trade secrets and copyrights. Gstar fought long and hard in July and August to bar Mr. Lorenzo's ability to view the revision history metadata, but this Court rejected that position and signed the Protective Order allowing such review as part of the first step of the audit process. In its motion to reconsider, Gstar is now seeking a second bite at the apple by making the same arguments it made before, even though those arguments have already been rejected by this Court. As the ITC explained before, and as it explains again below, Mr. Lorenzo must be able to view the revision history metadata as part of the revision selection process set forth in Section 8.3(a) of the Protective Order because (1) the ITC is limited to examining only four out of some 56,000 revisions of Gstar's source code, (2) Gstar agreed in the Commercial Membership Agreement ("CMA") to give the ITC access to Gstar's source code, and (3) Gstar should not be rewarded for failing to comply with its obligations under the CMA, as confirmed by the prior Arbitration Award and Judge Mosman's order in Case No. 3:16-mc-00061-MO.

**DISCUSSION**

Even though the Hon. Michael H. Simon's September 11, 2020 e-mail to Gstar's counsel said that the motion for reconsideration need not brief or show the traditional basis for reconsideration, it is worth noting that the Court previously ordered briefing on this and other issues relating to the Protective Order, which briefs were filed by both parties on July 29, 2020 and August 4, 2020, and that the parties argued these issues at the hearing on August 10, 2020. This followed telephone conferences between counsel for the parties on June 25, July 20, July 21, and August 13, 2020 about the Protective Order. The Court entered the signed Protective Order on August 29, 2020. Not one of Gstar's arguments in its motion to reconsider is different than the

arguments it raised throughout the entire "meet and confer," briefing, and oral argument process. This is simply another attempt by Gstar to slow things down and interfere with the ITC's ability to perform the essential audit of Gstar's source code.

Nevertheless, it is worth revisiting why the ITC pushed for Mr. Lorenzo to be able to review the metadata in Gstar's source code repository/revision history. The audit process set forth in Section 8 of the Protective Order proceeds, in relevant part, as follows: (1) the Producing Party (Gstar) allows the Receiving Party (the ITC) to view the Producing Party's source code repository by video and the Receiving Party chooses four revisions of the software for further analysis; (2) the Receiving Party will verify that the chosen revisions can build into an executable program; (3) the Producing Party will generate authentication check values (an MD5 hash value) to further verify the revisions; (4) certain comparison tools will be loaded onto a "source code computer" at the office(s) of Gstar's counsel; (5) the Producing Party will load the chosen revisions onto the source code computer; (6) the Receiving Party will load versions of its own software that it wishes to compare onto the same source code computer; (7) the source code computer will be disconnected from the internet or any outside access; (8) the Receiving Party then uses comparison tools previously loaded onto the source code computer to compare Gstar's source code with the ITC's source code to look for evidence of copying or misappropriation.

As could be seen from the video Mr. Lorenzo prepared (which was previously shared with the Court and counsel for Gstar), the metadata in the source code repository and revision history do not disclose the source code itself and only show who worked on the code, when they worked on the code, the file names they worked on, and general comments about what they did. None of that information can be used for a competitive disadvantage by the ITC.

Even though Gstar indicated that it has some 56,000 versions of GstarCAD 8 in its revision history control system(s)[1], Gstar only agreed to allow the ITC to select four revisions for comparison. This means that the ITC needs to be very careful and strategic in selecting the right revisions that are most likely to provide evidence of illegal misappropriation and copying. This is unlike the typical situation, in which the *entire* revision control system is to be produced and accessible to the receiving party. As Professor Lydia Pallas Loren, the Kay Kitagawa and Andy Johnson-Laird Intellectual Property Faculty Scholar at Lewis & Clark School of Law, and Andy Johnson-Laird wrote in Federal Courts Law Review:

> Where the source code is managed by a revision control program, the order should require the production of the entire source code tree. The entire source code tree should be a required disclosure because (a) this is the least burdensome on the producing party, (b) it contains the complete history of the source code, and (c) it is the electronic form —in which it is ordinarily maintained or in a reasonably useable form or forms.

Loren, Prof. Lydia Pallas and Johnson-Laird, Andy, *Computer Software-Related Litigation: Discovery and The Overly-Protective Order*, 6 Fed. Cts. L. Rev. 1, 17 (2012) (found at https://www.yumpu.com/en/document/read/40833800/computer-software-related-litigation-federal-courts-law-review).

After years of working on and with the IntelliCAD source code, Mr. Lorenzo is the only one who would have the knowledge and experience on the revision selection video call to view the GstarCAD 8 revision history metadata and to quickly and efficiently know which revisions are most likely to contain discoverable evidence of misappropriation and copying. There is no way that he could effectively communicate all the possible permutations of information to the ITC's

[1] Actually, Gstar stated that the repository "contains approximately 56,000 such revision history records in the 3.3-year period starting December 2010"; this means a far *greater* number of revisions could exist beyond that limited time period. *See* Brief in Support of Gstar's Proposed Protective Order Language (Doc. No. 42), p. 3.

experts or its counsel as to which particular time frames, which particular amounts or sections of code that were revised, or how particular revisions might relate to the ITC's source code, etc.

In its reconsideration motion, Gstar again cites *Telebuyer, LLC v. Amazon.com, Inc*., 13-CV-1677, 2014 U.S. Dist. LEXIS 147049 (W.D. Wash., July 7, 2014)[2] for the proposition that every court treats the revision history and its metadata the same as the source code itself. In that case, however, the court noted that the party seeking production gave the court no reason to not err on the side of caution regarding production of the revision history. *Id*. at *9-*10. Here, on the other hand, there is a very good reason – Gstar's insistence that the ITC can only examine four out of 56,000 or more specified revisions of the GstarCAD 8 source code. Moreover, courts in other cases have ordered production of revision histories for source code without any discussion of limitations of access like those imposed here. *See, e.g., Netbula, LLC v. Chordiant Software, Inc*., No. C08-00019 JW (HRL), 2009 U.S. Dist. LEXIS 131547, *4-*5 (N.D. Cal., December 16, 2019). These questions are highly specific and fact-intensive, and unique to each situation. *Lone Star Silicon Innovations LLC v. Toshiba Corp.*, No. C 17-04034 WHA, 2017 U.S. Dist. LEXIS 210484, *10 (N.D. Cal., December 20, 2017). One cannot take one case like *Telebuyer* and argue that revision history metadata must never been seen under any circumstances by the opposing party's president.

The fact that Mr. Lorenzo needs to be able to view the revision history metadata is greatly strengthened because Gstar agreed in writing in the CMA to allow the ITC to inspect and audit its source code, though Gstar tries to limit, duck, and avoid its prior agreement in its motion to reconsider. Gstar repeatedly states in its motion that the CMA expired, but the point is that Gstar

---

[2] As the ITC previously noted when Gstar relied on this case, there was no indication that the party seeking the broader protection in that case had previously agreed or been ordered to submit to audits of its source code. *Telebuyer, LLC v. Amazon.com, Inc*., Case No. 13-CV-1677, 2014 U.S. Dist. LEXIS 147049, *9 (W.D. Wash. July 7, 2014).

voluntarily agreed in the CMA to open its records and code to the ITC's inspection and audit during the life of the agreement and for three years afterwards. The ITC demanded such inspection and audit, and Gstar refused. The ITC initiated an arbitration proceeding pursuant to the terms of the CMA to enforce its audit rights, and after Gstar continued to refuse, the ITC was awarded a decision granting the right to conduct such an audit. That arbitration award was confirmed by Judge Mosman's order in Case No. 3:16-mc-00061-MO, but Gstar refused to comply with the court's order and the arbitration award. Gstar now asserts the inspection and audit rights expired in May 2018, but gives no explanation of why it should be rewarded for its obstinate breaches of the CMA and violation of Judge Mosman's order. The fact of the matter is that, unlike many cases, Gstar agreed in writing to give the ITC access to Gstar's source code and has only been able to drag things out this long because of its willful, intentional, and continual refusal to comply with its obligations. Gstar should not benefit from its misconduct by limiting the number of revisions the ITC can analyze and then making it riskier and more burdensome for the ITC to choose the right revisions for comparison.

Gstar also makes other assertions about the terms of the CMA that seem to add up to nothing. It asserts that the CMA allowed inspections on Gstar's premises, but the video conference session for selection of the four revisions will, on Gstar's side, take place from its offices in Beijing, China, according to Section 8.3(a) of the Protective Order. Gstar says that the CMA provides that violations of the inspection provisions will be penalized by a penalty of at least $100,000, but so what? Likewise, Gstar asserts that the CMA provides that certain uses of the ITC's code are permitted, but clearly stealing the code without permission and creating and selling competing software products are not permitted, by express provisions of the CMA. None of these provisions bear on the question at hand, which is whether the revision history metadata should be

designated as "Highly Confidential" (and, therefore, not reviewable by Mr. Lorenzo). This Court has already determined once that such revision history metadata can be reviewed by Mr. Lorenzo, and nothing in Gstar's motion to reconsider presents new or different arguments than it made before about why Mr. Lorenzo should not so be allowed.

**CONCLUSION**

Mr. Lorenzo must be allowed to see the revision history metadata so that the ITC has the best chance of selecting the right four revisions of the GstarCAD 8 source code for comparison. Gstar has agreed in writing and has been ordered by the arbitrator and Judge Mosman to allow the ITC to conduct the audit and see Gstar's source code, which distinguishes this situation from the typical case involving competitors. Professor Lydia Pallas Loren and Andy Johnson-Laird make clear that the entire revision history control system should be produced, and in light of the facts presented by this situation, there is no justification for further limiting Mr. Lorenzo's access or rewarding Gstar's continual delays and interference with the ITC's efforts to get to the bottom of this dispute.

DATED this 5th day of October 2020

**HARRIS BERNE CHRISTENSEN LLP**

By: /s/ Craig R. Berne
Shawn M. Lindsay, OSB #020695
Craig R. Berne, OSB #874202
Of Attorneys for Plaintiff