**Julia E. Markley**, OSB No. 000791
JMarkley@perkinscoie.com
**Sasha Petrova**, OSB No. 154008
SPetrova@perkinscoie.com
**Kyle Ryan Canavera** (*Pro Hac Vice*)
KCanavera@perkinscoie.com
**William Matthew Pierce** (*Pro Hac Vice*)
WPierce@perkinscoie.com
**PERKINS COIE LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

*Attorneys for Defendant*
*Suzhou Gstarsoft Co., Ltd.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

THE INTELLICAD TECHNOLOGY CONSORTIUM,

Plaintiff,

v.

SUZHOU GSTARSOFT CO. LTD.,

Defendant.

No. 3:19-cv-01963-SI

**REPLY IN SUPPORT OF MOTION TO RECONSIDER PROTECTIVE ORDER**

By Defendant Suzhou Gstarsoft Co., Ltd.

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1
II. ARGUMENTS ..... 2
  A. ITC Does Not Dispute that the Burden Shifts to ITC to Show Disclosure Is Warranted. ..... 2
  B. ITC's Only New Argument that Revision History Is Not Confidential Is Inapposite. ..... 2
  C. Neither the CMA Nor the 2016 Judgment Support Disclosure of Gstar's Revision History to ITC's President. ..... 3
    1. ITC Has Not Shown That the Expired CMA Warrants Disclosure. ..... 3
    2. ITC Does Not Support or Even Mention the Rationale Provided by the Court. ..... 5
  D. ITC's Argument that Mr. Lorenzo Is Needed to Choose Four of 56,000 Revisions Is Without Merit. ..... 6
  E. Gstar's Alternative Motion Stands Uncontested and Should Be Granted on that Basis. ..... 7
III. CONCLUSION ..... 8



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Intellicad Tech. Consortium v. Suzhou Gstarsoft Co. Ltd.*,
No. 1:2020-mc-00013 (E.D. Va.) ....................................3, 5

*Netbula, LLC v. Chordiant Software, Inc.*,
No. C08-00019 JW (HRL), 2009 U.S. Dist. Lexis 131547 (N.D. Cal., Dec. 16, 2019) ....................................3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 64-71....................................4



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## I. INTRODUCTION

ITC already has what it needs to analyze the merits of its case: its experts are receiving access to Gstar's source code and revision history. It is receiving that access under provisions that are more generous than the Model Protective Order, which this Court had said at the outset would guide the protections afforded in this case. Supplemental Declaration of Kyle R. Canavera ("Supp. Canavera Decl."), Ex. 1, p. 2.

Despite that, ITC wants more, insisting that its president and former software development director, Mr. Lorenzo, must also see Gstar's revision history. But ITC declines to offer any factual basis for why that is necessary, or any legal basis for placing that risk of competitive harm on Gstar. ITC repeats its conclusion that only Mr. Lorenzo can select versions of Gstar's code for review, but without any explanation why his live expertise is necessary for a decision that ITC has previously been able to make without Mr. Lorenzo's live participation.

ITC relies heavily on an expired contract (the CMA) and the judgment related thereto. However, ITC brought this copyright and trade secret case years after the CMA expired and without asserting any causes of action under the CMA. Yet ITC seeks to have the CMA decide the procedure of this case. Gstar seeks to clear its name in this case and expects to submit to the discovery procedures and protections typical of a tort action. Those protections are robust, because federal courts universally recognize that they should not permit one party to be harmed in the marketplace through the discovery procedures that occur within the courts' aegis.

Furthermore, the only legal rationale mentioned to date that would support ITC's position goes unmentioned in ITC's brief. At the prior hearing, the Court indicated that it was inclined to give Mr. Lorenzo access to Gstar's revision history metadata based on Gstar's supposed lack of a "reasonable expectation of privacy." ECF 51-1, pp. 12-13. Not only does ITC not argue why that rationale is correct given that it was based on an expired CMA provision, ITC does not mention that rationale in its opposition brief.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

ITC has not met its burden to show that disclosure is warranted based on reasonable expectations or any other legal or factual basis. Because this is a tort action intentionally separated by ITC in time and substance from the CMA, this action should be governed by the robust protections provided in any other tort cause of action, protections that favor not harming a company in the marketplace as part of discovery before the case has even been presented to a jury. And as the Court has already recognized, this newly filed action is not the correct procedure to enforce the past judgment. ECF 51-1, p. 11 ("And by the way, I'm not basing any of this on the arbitration that has already taken place. I'm not basing any of this on Judge Mosman's order in a different case. I kind of get the fact that we are here on a separate standalone case."). For those reasons, and the reasons discussed below, Gstar respectfully asks the Court to amend the protective order to prohibit ITC's President and former software development director access to Gstar's sensitive technical information.

## II. ARGUMENTS

### A. ITC Does Not Dispute that the Burden Shifts to ITC to Show Disclosure Is Warranted.

Gstar set out its position on the controlling standard for this motion, Mtn. at 3, and ITC does not dispute that standard. If the Court agrees with Gstar that revision history is a trade secret or otherwise confidential such that disclosure would be harmful, the burden shifts to ITC to show that disclosure is warranted. *Id.*

### B. ITC's Only New Argument that Revision History Is Not Confidential Is Inapposite.

ITC previously presented the Dave Lorenzo revision-history video, yet the Court still recognized at the hearing that revision history is tantamount to source code and would never ordinarily be ordered disclosed to a competitor's chief executive and programmer.

ITC's only new argument on the point is that it purports to have found an example of a court ordering production of revision history without the limitation of being treated as highly



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

confidential source code: *Netbula, LLC v. Chordiant Software, Inc.*, No. C08-00019 JW (HRL), 2009 U.S. Dist. Lexis 131547, *4-*5 (N.D. Cal., Dec. 16, 2019). But the only reason this *Netbula* order does not discuss limitations of access is because that was not the subject of dispute being resolved by the order. *Id.* The same order also discusses production of source code itself, *id.*, similarly "without any discussion of limitations of access," Resp. at 5, but that does not mean that there were none. In sum, ITC still has not provided an example of a court allowing a company's executive or developer access to its competitor's revision history.

Because Gstar has shown that revision history is a trade secret or confidential material such that disclosure would be harmful, Mtn. at 4-5, the burden shifts to ITC to prove that disclosure is warranted.

**C. Neither the CMA Nor the 2016 Judgment Support Disclosure of Gstar's Revision History to ITC's President.**

**1. ITC Has Not Shown That the Expired CMA Warrants Disclosure.**

ITC has not shown that the CMA or its prior contract-based judgment makes a difference here. ITC mounts no argument why the CMA should shape the discovery scope in this trade secret and copyright case two years after the last CMA provision expired. Instead, ITC merely repeats the familiar facts: Gstar and ITC agreed to the CMA; ITC sought an audit under the CMA; the parties did not reach agreement on the terms of such an audit; ITC attained an arbitration award that Gstar should submit to an audit; a district court confirmed the arbitration award.

ITC omits the fact that it never went through any process to try to enforce the audit-portion of its 2016 judgment, in the United States, China, or elsewhere. Not until this year did ITC attempt to enforce the monetary portion of its 2016 judgment, and that action is pending. *Intellicad Tech. Consortium v. Suzhou Gstarsoft Co. Ltd.*, No. 1:2020-mc-00013 (E.D. Va.). As the Court is aware, judgments are not self-executing and the law provides procedures and



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

process for a party to enforce a judgment. *See, e.g.*, Fed. R. Civ. P. 64-71 (relating to enforcement of judgments).

ITC incorrectly accuses Gstar of "obstinate breaches of the CMA and violation of Judge Mosman's order" (Resp. at 6) where: (1) ITC received its judgment two years before the CMA inspection provisions would expire and nearly four years before ITC filed this trade secret and copyright suit; and (2) ITC chose to let four years go by without starting any process to enforce its judgment. This tort claim action is not a proper way to enforce ITC's prior judgment. So while ITC complains that discovery under the Federal Rules of Civil Procedure without giving special weight to the CMA or its judgment in another case would prejudice ITC, ITC fails to take responsibility for its own choices to separate this suit from the CMA in both time and substance and to let four years go by without initiating any process to enforce its judgment. This tort action is not the proper vehicle to enforce either contractual rights or a judgment.

Not only does ITC decline to make any affirmative arguments to meet its burden, it fails to respond to Gstar's four different arguments why the CMA does not require disclosure here. Gstar argued that, if the CMA inspection provisions were intended to apply beyond contract actions or in civil discovery, they would have said so. ITC did not respond. Gstar argued that the CMA inspection provisions are best read to have no effect after their termination. ITC did not respond. Gstar argued that, at a minimum, Gstar should receive the alternative relief of having Dave Lorenzo's access limited to the time period during which the inspection provisions survived. ITC did not respond.

Finally, when Gstar offered a fourth reason why the CMA does not require disclosure here—that one CMA provision cannot be applied outside a contract action and in the context of a tort action with different disclosure procedures, different available damages, and a different subject-matter scope—ITC responded, but only with "so what?". The "so what?" is that applying the CMA in this tort case and apart from all the other CMA limitations that would



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

apply in a contract case gives the CMA more force than it can supply under the law. ITC has no authority for urging this Court to rely on the CMA to shape discovery in a case for tort remedies that could exceed the contractual remedies available under the CMA.

### 2. ITC Does Not Support or Even Mention the Rationale Provided by the Court.

Through several rounds of briefing and one lengthy hearing, only one legal rationale has been offered in support of allowing Mr. Lorenzo's access to Gstar's revision history. That rationale, presented by the Court at the hearing and therefore not previously briefed by the parties, was based on the inspection provision (5.4.2(a)) from the CMA, which survived expiration of the CMA by three years (to May 18, 2018). The plain language of that provision demonstrates that there was a right of inspection, and that right to inspection expired in May 2018. *See* Declaration of Kyle Canavera filed September 21, 2020, ECF 51 at 51-5, p. 9 (CMA § 5.4.2(a)). The Court agreed that reading was "technically right." ECF 51-1, pp. 12-13. But the Court reasoned that "there is no reasonable expectation of privacy by Gstar" for the revision history prior to May 18, 2018.[1] *Id.* On that basis, the Court expressed at the hearing its inclination to allow Mr. Lorenzo access to the revision history metadata through May 18, 2018. *Id.* at 13-14.

Gstar submits that the only reasonable expectation that Gstar could have formed in the context of this lawsuit was that the CMA would *not* apply to define the bounds of the protective order. Perhaps the Court is right that in 2015 and the few years following that Gstar did not reasonably expect that it would have privacy vis-à-vis Mr. Lorenzo in its revision history metadata. But this lawsuit was not brought in 2015, nor was the protective order entered in 2015. This case is being litigated in 2020 over two years after the inspection provision expired.

[1] Gstar suspects that the Court was not intending to invoke the Fourth Amendment standard in this regard, and Gstar did not find any caselaw applying that standard in a protective order context in civil litigation. But Gstar will use that same language in this discussion for the notion to which Gstar understands the Court was referring. ECF 51-1, pp. 13, 16.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

The only reasonable expectation that Gstar could have formed as to how this lawsuit would be conducted is that the CMA would be interpreted to mean what it says: that an expired inspection right would remain expired. The current protective order favors the expectations of the parties five years ago over the reasonable expectation of the parties today. By not including the May 18, 2018 limitation, the Court has actually granted ITC more rights than it ever had under the CMA.

ITC's Opposition does not add any clarity to this matter. Not only does ITC not take up the torch to explain why the Court's rationale is correct, ITC *does not even mention that rationale*. And ITC does not respond to Gstar's explanations why other potential rationales would not apply. Instead of legal authority, ITC offers 100% narrative: we had a right of inspection at one point, we have a judgment for an audit from a separate case, so we think we should be able to enforce those rights here.

Gstar submits that the current protective order does not embody the reasonable expectation of the parties. On that basis, Gstar believes that the protective order should not be maintained based on the rationale described by the Court at the prior hearing.

### D. ITC's Argument that Mr. Lorenzo Is Needed to Choose Four of 56,000 Revisions Is Without Merit.

ITC argues that it needs Mr. Lorenzo to select the four versions from the 56,000 available because of the importance of the selection and his familiarity with ITC code. ITC's argument fails for several reasons.

First, ITC has twice selected versions of Gstar code for review *sight unseen*, which demonstrates that Mr. Lorenzo's presence at the live meeting selection is not needed. During audit discussions in 2014, ITC selected three versions by date: one at the date of announcement, one a year after development began, and a third at a mid-point between the two others. Supp. Canavera Decl., Ex. 3. And even in the current case, ITC has already selected one version of code without viewing revision history. And when selecting versions of a years-long software project, it makes sense that selections would just be at occasional markers in time. If ITC has



Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

previously selected three versions based on timing and without viewing the revision history, then why can't it do it again now?

Second, there is no evidence that ITC's two existing experts are not adequately qualified to select the remaining three versions from the 56,000 versions available.

Third, Mr. Lorenzo's deep familiarity with *ITC*'s code does not give him any significant advantage over ITC's experts when reviewing *Gstar*'s revision history. In fact, ITC's experts will find that Gstar's source code repository is structured much differently than ITC's, based on design choices by Gstar that Gstar considers to be trade secrets. Thus, not only would Mr. Lorenzo *not* be able to provide more insight over ITC's experts, Gstar would be disclosing trade secret design decisions to its direct competitor.

Finally, although ITC frames the limitation of four revisions as restrictions being forced upon it by Gstar, ITC's characterization is incorrect. ITC has repeatedly expressed satisfaction with a limited number of revisions, even while Gstar has consistently stated its position that it would not be comfortable allowing Mr. Lorenzo access to its revision history information. *See* Supp. Canavera Decl. Ex. 2, p. 2 ("We felt like that would give us enough and be manageable and doable without overwhelming everybody's resources.").[2]

**E. Gstar's Alternative Motion Stands Uncontested and Should Be Granted on that Basis.**

In its motion, Gstar asked that the Court deny Mr. Lorenzo access to Gstar's revision history information. Mtn. at 2-9. Gstar asked in the alternative that Mr. Lorenzo not be allowed to access Gstar's revision history after May 18, 2018, in accordance with the analysis expressed

[2] To the extent ITC's Opposition is tacitly encouraging the Court to undo ITC's agreement to four source code revisions, Gstar submits that this is inappropriate. ITC agreed to four revisions without reservations in the protective order submitted to the Court, a protective order that include numerous concessions exchanged on both sides. ITC bargained for the four revisions they are receiving—down only one from the five they requested—and it would be unfair to undo that bargained-for agreement between the parties. Further, it does not make sense for ITC to seek "reconsideration" of the number of revisions, because that was not an issue decided by the Court. Rather it was stipulated to by the parties.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

at the hearing on the earlier briefing. Mtn. at 9-10. Because ITC did not respond to this alternative motion (and for the reasons in the motion), the motion should be granted.

## III. CONCLUSION

ITC has not met its burden to show that disclosure of Gstar's revision history to Mr. Lorenzo is warranted. Gstar respectfully asks the Court to reconsider its decision and amend the Protective Order consistent with the language set out in the Motion.

DATED: October 19, 2020

**PERKINS COIE LLP**

By: *s/ Kyle Canavera*

**Julia E. Markley**, OSB No. 000791
JMarkley@perkinscoie.com
**Sasha Petrova**, OSB No. 154008
SPetrova@perkinscoie.com
**Kyle Ryan Canavera** (*Pro Hac Vice*)
KCanavera@perkinscoie.com
**William Matthew Pierce** (*Pro Hac Vice*)
WPierce@perkinscoie.com
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

*Attorneys for Defendant*
*Suzhou Gstarsoft Co., Ltd.*