**Shawn M. Lindsay, OSB #020695**
shawn@hbclawyers.com
**Craig R. Berne, OSB #874202**
craig@hbclawyers.com
Harris Berne Christensen LLP
15350 S.W. Sequoia Parkway, Suite 250
Portland, OR 97224
Telephone: (503) 968-1475
Fax: (503) 968-2003

Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **THE INTELLICAD TECHNOLOGY CONSORTIUM,**<br><br>Plaintiff,<br><br>v.<br><br>**SUZHOU GSTARSOFT CO. LTD.,**<br><br>Defendant. | **Case No. 3:19-cv-01963-SI**<br><br>**PLAINTIFF THE INTELLICAD TECHNOLOGY CONSORTIUM'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL AND FOR PROTECTIVE ORDER** |

## INTRODUCTION

The parties and the Court spent several months working to come up with a final version of the protective order that, in relevant part, specified exactly how a party would be able to proceed with an audit comparison of its source code to the opposing party's source code in order to identify similar or identical code that could provide evidence of trade secret misappropriation, breach of fiduciary duties, and violation of copyright laws. After that process was largely completed,

Plaintiff The IntelliCAD Technology Consortium ("the ITC") asked Defendant Suzhou Gstarsoft Co. Ltd. ("Gstar") in early September to cooperate in initiating the audit process set forth in the protective order. Gstar, however, refused to move forward and instead insisted that the ITC had to first supplement its interrogatory responses to further specify the details of each and every misappropriated trade secret. After attempts to meet and confer reached a dead end, Gstar filed its motion to compel and for a protective order (Doc. No. 58), continuing its efforts to slow the proceedings and make them more burdensome and expensive for the ITC, and attempting to put the cart before the horse by forcing the ITC to meet its trial evidentiary burden before proceeding with discovery. The ITC's existing interrogatory responses are perfectly reasonable and appropriate and should not delay in any way the critical audit that the ITC requested pursuant to FRCP 34.

## DISCUSSION

### I. Fact-Intensive and Case-Specific Question.

It is worth keeping in mind at the outset that this is not a situation where the ITC has failed to respond Gstar's interrogatories, but rather one where Gstar simply does not like the answers it received and is therefore withholding its cooperation in proceeding with the software audit requested by the ITC. Exhibit 2 to the Declaration of Julia Markley in Support of Motion to Compel ("Markley Decl.") (Doc. No. 60-2); Exhibits 5 and 6 to the Markley Decl. (Doc. Nos. 60-5, 60-6). The ITC requested the audit pursuant to FRCP 34, using the procedure set forth in the signed protective order (Doc. No. 49). *Id*. The requested audit is consistent with Section 5.4.2 (a)-(b) of the Commercial Membership Agreement Gstar signed when it was a member of the ITC, and was previously ordered as a result of the 2015 Audit Arbitration and the resulting judgment entered by the Hon. Michael Mosman in Case No. 3:16-mc-00061-MO. Declaration of David Lorenzo in

Support of Plaintiff's Opposition to Defendant's Motion to Dismiss ("Lorenzo Decl."), Exhibits A-D (Doc. No. 22-2); Declaration of Shawn M. Lindsay in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss ("Lindsay Decl."), ¶¶ 11, 22 and Exhibits J and T. The ITC has been trying for years to get Gstar to cooperate in the audit, which is crucial to establishing whether Gstar has engaged in the alleged misappropriation. Gstar's Interrogatory no. 1 asked the ITC to identify all trade secrets that it alleges that Gstar has misappropriated, and the ITC, after reserving its right to amend its answer after the audit and further discovery, listed the ITC's "IntelliCAD source code, processes, and tools." (Doc. No. 60-2.) Gstar argues that it can further delay the audit until the ITC provides additional detail about its trade secrets.

Gstar primarily relies on *Vesta Corp. v. Amdocs Mgmt. Ltd*., 147 F.Supp.3d 1147 (D. Or. 2015), in which Judge Marco Hernandez granted a defendant in a trade secrets misappropriation case a protective order barring the defendant from having to respond to plaintiff's discovery until plaintiff specified "with reasonable particularity" the trade secrets that were allegedly misappropriated. The court there, however, explained there is no "talismanic approach" to the question of how specifically the plaintiff must describe its trade secrets before it is allowed to proceed with its own discovery from a defendant. 147 F.Supp.3d at 1151. As the court put it:

> A careful review of the many cases presented by both parties makes clear that there is no bright-line answer as to the degree of particularity that must be disclosed in order for discovery to proceed in a trade secrets case. Rather, the Court's analysis in each case is fact-intensive and the outcome is fact-specific.

*Id*. at 1150. Judge Hernandez surveyed the landscape and found two decisions from ***this*** Court that each held a plaintiff did ***not*** have to provide further detail about its misappropriated trade secrets before the defendant would have to respond to plaintiff's discovery - *Nike, Inc. v. Enter Play Sports, Inc*., 305 F.R.D. 642, 645 (D. Or. 2015) (plaintiff's description of its trade secrets was sufficient where the defendant was able to adequately understand and respond to the allegations of

the complaint in its answer) and *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 305 F.R.D. 630, 641 (D. Or. 2015), *reconsideration den.*, 104 F.Supp.3d 1150, 1160 (D. Or. 2015) (plaintiff had numerous trade secrets and had no way of knowing which secrets defendant misappropriated until plaintiff conducted its discovery, and plaintiff would be placed in a Catch-22 of possibly describing the trade secrets too broadly or too narrowly). Judge Hernandez, however, looked at the specific facts and circumstances of the *Vesta* situation and determined that it was appropriate in that case to require the plaintiff to be more specific about its trade secrets because the plaintiff knew exactly what specific trade secrets it shared with the defendant in a specific number of meetings and exchanges over a defined and limited period of time, and because it was not a case where defendant would have stolen large amounts of the plaintiff's information without the plaintiff's knowledge. As the court stated:

> However, this case differs from other cases where plaintiffs may face an inherent difficulty identifying what portions of trade secrets have been misappropriated prior to receipt of discovery from defendants. * * * Unlike the plaintiff in *St. Jude*, for example, Plaintiff here should know exactly what trade secrets were shared with Defendants because such disclosures took place in a discreet number of joint meetings and exchanges of information over a defined time frame. * * * This is not a case where Defendants stole large volumes of documents or secrets from Plaintiff without Plaintiff's knowledge. Similarly, Plaintiff fails to provide any argument that premature trade secret identification in this case risks encompassing non-trade secret information or may be too specific to capture all misappropriated trade secrets.

147 F.Supp.3d at 1154. Judge Hernandez was also concerned about the "needless exposure" of the defendant's trade secrets. 147 F.Supp.3d at 1153-1154.

As Judge Hernandez said in a more recent case, in which he *denied* a defendant's motion to compel more definite descriptions of trade secrets by a plaintiff, "A plaintiff does not have to prove their trade secret claim prior to conducting discovery, but it 'must provide enough detail about [its] alleged trade secrets to at least suggest that the alleged trade secrets might be legally

protectable.'" *Opal Labs, Inc. v. Sprinklr, Inc.*, No. 3:18-CV-01192-HZ, 2019 U.S. Dist. LEXIS 208870, *4 (D. Or. December 14, 2019). The ITC' Second Amended Complaint and the interrogatory responses certainly provide such sufficient detail.

Other decisions from the District of Oregon have denied similar requests from defendants. A decision by the Hon. Youlee Yim You followed *St. Jude* and denied the defendant's request because a plaintiff has a broad right to discovery; the plaintiff had numerous trade secrets and no way of knowing at that stage what was misappropriated without conducting its requested discovery; and the plaintiff would be placed in a Catch-22 of having to describe misappropriated trade secrets without knowing which ones had been misappropriated. *Tripwire, Inc. v. Upguard, Inc.*, Case No. 3:17-cv-114-YY, 2017 U.S. Dist. LEXIS 230843, *13-*14 (D. Or. November 13, 2017). Similarly, this Court found that a plaintiff's description of its trade secrets was sufficient where the defendant had adequate notice of the plaintiff's claims such that defendant was able to answer the plaintiff's complaint without moving to make it more definite and certain. *Quaiz v. Rockler Retail Group, Inc.*, Case No. 3:16-cv-1879-SI, 2017 U.S. Dist. LEXIS 35415, *7-*8 (D. Or. March 13, 2017). In *Nike* and in *St. Jude*, this Court also cited with approval cases from other jurisdictions that have similarly refused to require plaintiffs to specify their trade secrets before proceeding with discovery. *Nike, Inc. v. Enter Play Sports, Inc.*, *supra*, 305 F.R.D. at 645, citing *Global Advanced Metals USA, Inc. v. Kemet Blue Powder Corp.*, Case No. 3:11-cv-00793-RCJ-VPC, 2012 U.S. Dist. LEXIS 126550, *7 (D. Nev. Sept. 6, 2012); *Montgomery v. eTreppid Techs., LLC*, Case No. 3:06-CV-0056-PMP (VPC), 2008 U.S. Dist. LEXIS 54339, *10-*11 (D. Nev. May 29, 2008); and *BioD, LLC v. Amnio Tech., LLC*, Case No. No. 2:13-cv-1670-HRH, 2014 U.S. Dist. LEXIS 109755, *5 (D. Ariz. Aug. 6, 2014); *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, *supra*, 305 F.R.D. at 641.

The instant matter is far more comparable to *Nike*, *St. Jude*, *Tripwire*, and *Quaiz* than *Vesta*. Here, Gstar had access to and used the ITC's source code for over a decade while it was a member of the ITC and while its officers served on the ITC's board of directors. Lorenzo Decl. (Doc. No. 22-2), ¶¶ 7-9. The ITC source code to which Gstar had full access while it was a commercial member contained huge amounts of code. The ITC will not know which parts of the software code were stolen by Gstar until the audit laid out in Section 8 of the protective order and requested by the ITC pursuant to FRCP 34 takes place. (Doc. No. 60-2, Response to Interrogatory No. 2.) Under the audit procedure, the ITC will not have full and unfettered access to Gstar's source code itself, but rather will only be able to see the parts of the code that the comparison tools identify as duplicative. Under Sections 8.3(e)(6) and 8.3(f) of the protective order, the comparison results will be known to Gstar when they are identified by the ITC's expert, and when Gstar produces the files with those comparison results to the ITC's expert. (Doc. No. 49, pp. 20-22.) Here, Gstar obviously understood the claims of trade secrets well enough to be able to answer the relevant allegations in the second amended complaint, like the defendant in *Nike*. (Doc. No. 34.) Here, the ITC can only speculate which of the millions of lines of code Gstar misappropriated until the comparison audit is run; forcing the ITC to specify all of the potentially misappropriated trade secrets at this time puts the ITC in the Catch-22 of potentially describing the relevant trade secrets too narrowly or too broadly, as the Court cautioned in *St. Jude* and *Tripwire*. There is no risk of "needless exposure" of Gstar's trade secrets because the only ones that will be copied and produced to the ITC's expert are the ones that are duplicative of those found in the ITC's source code. This Court should follow its own precedents and decline Gstar's motions.

II. <u>Gstar's Irrelevant and Premature Arguments</u>.

Gstar spends the remainder of its brief citing cases that have nothing to do with this situation and making its closing arguments for trial or summary judgment by putting the proverbial cart miles before the horse. Gstar cites *DropzoneMS, LLC v. Cockayne*, Case No. 3:16-cv-02348-YY, 2019 U.S. Dist. LEXIS 225681 (D. Or. September 12, 2019), even though that decision involved cross-motions for summary judgment, not a discovery dispute. *Id*. at *2-*3, *26. Gstar cites *Keywords, LLC v. Internet Shopping Enterprises, Inc.*, No. CV 05-2488 MMM (EX), 2005 U.S. Dist. LEXIS 51464 (C.D. Cal. June 29, 2005), though that decision involved a motion for a preliminary injunction, not a discovery dispute. *Id*. at *2-*3. Gstar quotes from the Federal Courts Law Review article by Professor Lydia Pallas Loren and Andy Johnson-Laird, but the cited quote (which appears on page 10 of the article, not page 17) says nothing about this particular issue and the rest of the article demonstrates the need to follow the audit protocol laid out in our protective order and to reject demands that increase cost and inconvenience to the requesting party. Loren, Prof. Lydia Pallas and Johnson-Laird, Andy, *Computer Software-Related Litigation: Discovery and The Overly-Protective Order*, 6 Fed. Cts. L. Rev. 1, 10, 19 (2012) (found at https://www.yumpu.com/en/document/read/40833800/computer-software-related-litigation-federal-courts-law-review). Nothing in that article specifically talks about requiring a plaintiff to specifically identify its trade secrets before conducting the discovery needed to identify the misappropriated trade secrets. Gstar cites *Citcon USA, LLC v. RiverPay, Inc.*, No. 18-CV-02585-NC, 2019 U.S. Dist. LEXIS 106295 (N.D. Cal. June 25, 2019), though that decision involved a motion for a preliminary injunction, not a discovery dispute. *Id*. at *1-*2. Gstar cites *Soc Apps, LLC v. Zynga, Inc.*, 4:11-CV-04910 YGR, 2012 U.S. Dist. LEXIS 82767 (N.D. Cal. June 14, 2012), which enforces a California state statute (C.C.P. § 2019.210) that specifically requires identification of trade secrets by a plaintiff suing under the California Uniform Trade Secrets Act

(statutes that have no application to the instant matter). Gstar cites *WeRide Corp. v. Kun Huang*, 379 F.Supp.3d 834, 841 (N.D. Cal. 2019), though that decision involved a motion for a preliminary injunction, not a discovery dispute, and the case also involved C.C.P. § 2019.210. *Id.* at *2-*3.

It should go without saying that the elements, burdens of proof, and procedural requirements of a motion for summary judgment, a motion for a preliminary injunction, and a proceeding under the California Uniform Trade Secrets Act are completely different than those applicable to the instant discovery dispute.

Gstar pushes hard on the point that GstarCAD and IntelliCAD are "workalikes" of AutoCAD, and therefore may have similar "features." First, the fact that the source codes may accomplish similar things does not necessarily mean they would have *identical* code, which the audit is designed to discover. There are any number of ways code can be written to accomplish particular tasks without using the same exact language. Second, and more importantly, if the audit discovers identical or similar code, Gstar will be informed of those instances (per the processes set forth in Sections 8.3(e)(6) and 8.3(f) of the protective order) and will have plenty of time to analyze the similarities and explain why they are not evidence of Gstar's misappropriation of the ITC's trade secrets or copyrighted material (whether or not such copyrighted material constitutes a trade secret). Gstar would have had even more time to analyze the similarities and prepare its own expert reports if it had cooperated in starting the audit over two months ago. The fact that Gstar may have an argument to make down the road does not mean that the ITC's interrogatory response was inadequate based on the currently known information or that the ITC should be prohibited from proceeding with audit as laid out in Section 8 of the protective order.

Gstar asserts that its source code may make use of licensed components from third parties that would be similar to those licensed from such third parties by the ITC. First, the fact that Gstar

may have components in its code identical or similar to such components in the ITC's code does not answer the question of how, when, and from what source Gstar acquired such components. Did it copy those from the ITC or did Gstar legitimately get them on its own from the third parties, and when did it do so? Those are questions both parties would have to investigate if it turned out that such similar components were found in the audit. Second, Section 8.3(e)(1) of the protective order allows the ITC to remove irrelevant materials from the source code before the comparison, which means that the ITC could remove any portions that both companies could legitimately and appropriately have before running the comparison tools, thus eliminating or reducing Gstar's concern. Third, and again most importantly, these issues are properly addressed on summary judgment or in closing arguments, not to bar discovery at the outset of the case. This is not the time to resolve questions about the source and legitimacy of portions of Gstar's source code that have not yet even been identified.

In a similar vein, Gstar argues (based largely on inadmissible hearsay) that the ITC might not even own or have the rights to portions of its software. Without getting into the merits of such arguments, whether such portions constitute trade secrets or properly copyrighted material or whether the theft of such portions would be evidence of breaches of fiduciary duties by Gstar are not questions that must be answered in full before the ITC can begin its discovery by conducting the audit. It makes far more sense, and far better serves the general interests and policies underlying discovery, to allow the audit to go forward, have the parties learn which portions of the source code appear to have been taken from the ITC's source code, and then investigate how Gstar came to have such identical code and who owns the rights to such code. It is significant that the defendant in *St. Jude* made this same argument, but that did not cause this Court to deny the plaintiff's requested discovery there. *St. Jude Med. S.C., Inc. v. Janssen-Counotte, supra*, 305 F.R.D. at 638.

Gstar's arguments about the responses to the other interrogatories (2-7 and 9) rise and fall with the response to interrogatory no. 1, and therefore the responses to those interrogatories are adequate for the same reason as the response to the first interrogatory. They are appropriate because they give complete and correct answers based on the information currently known by the ITC, without breaching confidentiality agreements in other situations or answering compound questions that would cause the number of interrogatories to exceed the cap in FRCP 33(a)(1).

## CONCLUSION

Despite all the time and effort put into crafting a reasonable and workable protective order with a specific procedure for the source code audit, which is already years overdue, Gstar is now attempting to add new provisions requiring the ITC to give the details of its misappropriated trade secrets before the ITC is able to determine exactly what has been misappropriated and is using this issue as another way of delaying submitting to the audit. Gstar's grounds for its position are no more convincing than the grounds asserted by the defendants in this Court's prior decisions in *Nike*, *St. Jude*, and *Quaiz*. Gstar's arguments about the AutoCAD "workalike" similarities and questions regarding the ITC's rights to, and ownership of, all the parts of its source code are for a later day and are not appropriate justifications for barring the ITC from conducting its most essential discovery. For the ITC to have a fair opportunity to prove its claims, it must be allowed to proceed now with the source code audit, without further delay, interference, or disruption by Gstar. The ITC requests that the Court deny Gstar's motion in full and order Gstar to proceed with the audit with no further delay.

DATED this 19th day of November 2020 **HARRIS BERNE CHRISTENSEN LLP**

By: /s/ Craig R. Berne
Shawn M. Lindsay, OSB #020695
Craig R. Berne, OSB #874202
Of Attorneys for Plaintiff