**Julia E. Markley**, OSB No. 000791
JMarkley@perkinscoie.com
**Sasha Petrova**, OSB No. 154008
SPetrova@perkinscoie.com
**Kyle Ryan Canavera** (*Pro Hac Vice*)
KCanavera@perkinscoie.com
**William Matthew Pierce** (*Pro Hac Vice*)
WPierce@perkinscoie.com
**PERKINS COIE LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

*Attorneys for Defendant*
*Suzhou Gstarsoft Co., Ltd.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

THE INTELLICAD TECHNOLOGY CONSORTIUM,

Plaintiff,

v.

SUZHOU GSTARSOFT CO. LTD.,

Defendant.

No. 3:19-cv-01963-SI

**REPLY IN SUPPORT OF MOTION TO COMPEL INTERROGATORY RESPONSES AND FOR A PROTECTIVE ORDER**

By Defendant Suzhou Gstarsoft Co., Ltd.

Oral Argument Requested

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 3

A. Gstar only seeks identification of trade secrets that ITC claims to have disclosed to Gstar—information that is currently available to ITC. ..... 3

B. Whether a party has sufficiently identified its trade secrets is a fact-intensive inquiry, and the legal authorities on which ITC relies are factually distinguishable. ..... 4

C. ITC's Opposition demonstrates its inability, or unwillingness, to engage on the specific facts of this case and the AutoCAD workalike industry that show that ITC owns far less than it claims. ..... 5

1. ITC fails to recognize the import of third-party ownership of portions of its code. ..... 6

2. Contrary to ITC's allegations, the Protective Order does not address Gstar's right to discover information about ITC's alleged trade secrets. ..... 8

D. ITC has failed to respond to Gstar's arguments regarding the remaining interrogatories, which are deficient for multiple independent reasons and must be supplemented. ..... 9

III. CONCLUSION ..... 10




**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Glob. Advanced Metals USA, Inc. v. Kemet Blue Powder Corp.*,
No. 3:11-CV-00793-RCJ, 2012 WL 3884939 (D. Nev. Sept. 6, 2012)....................................4

*Imax Corp. v. Cinema Techs., Inc.*,
152 F.3d 1161 (9th Cir. 1998) ..........................................................................................5

*Montgomery v. eTreppid Techs., LLC.*,
No. 3:06CV0056PMPVPC, 2008 WL 2277118 (D. Nev. May 29, 2008) ............................4, 5

*Tripwire, Inc. v. UpGuard, Inc.*,
No. 3:17-CV-114-YY, 2017 WL 8682354 (D. Or. Nov. 13, 2017) ........................................4

**OTHER AUTHORITIES**

FRCP 34.........................................................................................................................3



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## I. INTRODUCTION

ITC should be ordered to identify its trade secrets with reasonable particularity before Gstar is required to produce its source code for inspection. ITC's arguments to the contrary are primarily that (1) a Protective Order (ECF 49) is entered in this case, and so source code review should begin without any further considerations, and (2) Gstar is engaged in some sort of untoward attempt to delay the discovery process. Not only is ITC wrong on both counts, neither of ITC's arguments address the core issue of this Motion: that Gstar is without sufficient notice regarding what specific trade secrets ITC alleges it disclosed to Gstar, which is information that ITC has fully within its knowledge and control at this time.

ITC avoids the core issue by inaccurately characterizing Gstar's Motion as seeking identification of trade secrets *misappropriated*, as opposed to *disclosed*. That inaccuracy persists in ITC's analysis of the case law, most of which Gstar has already distinguished. And, as summarized below, the few new cases to which ITC cites are also distinguishable because ITC knows now what trade secrets it disclosed to Gstar.

Regarding (1) the entry of the Protective Order, Gstar has demonstrated that ITC's identification of its trade secrets as "source code, processes, and tools" is insufficient under applicable law, law which applies apart from any Protective Order. The Protective Order establishes how the parties' sensitive information will be protected, whereas the caselaw establishing the need to provide early identification of trade secrets addresses fairness and efficiency concerns. The former does not replace or nullify the latter.

Gstar explained in its Motion how the unique facts of this case especially warrant early identification of ITC's trade secrets. Namely, the incredible degree of similarity between the implementation of two "AutoCAD workalikes" like GstarCAD and IntelliCAD will create more false positives than true positives in the comparison process, and Gstar needs time to be able to perform party and non-party discovery to refute ITC's claims of ownership and economic value



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

in any such false positives. Furthermore, Gstar raised the fact that ITC may not even own the original IntelliCAD source code, which appears to remain in significant part in the allegedly misappropriated versions of IntelliCAD. Far from addressing these factual concerns, ITC refuses to engage with them, indicating just how well-founded those concerns are.

Attempting to shift the focus of this Motion, ITC claims that the Protective Order addresses Gstar's concerns with the provisions that give ITC's expert the ability to remove workalike code before she runs her comparison, and the ability to generate PDF printouts of her comparison results. But as explained below, ITC fought for—and won—the right to *not* remove workalike code and the right to *not* tell Gstar how its expert's analysis tool generates those results files. Prior to ITC serving its opening expert report (one month after the close of fact discovery), the Protective Order only affords Gstar the right to sift through tens of thousands of pages—by ITC's own estimation—of computer code generated using a tool that Gstar knows nothing about, not even its name. Gstar submits that this is unfair in any case, and much more so here where ITC's alleged trade secret rights are demonstrably overinflated.

Regarding (2) the supposed delay tactics by Gstar, those allegations are without merit. Gstar raised ITC's need to identify its trade secrets one month before the Protective Order was entered, and two months before ITC served a request for production of the source code. ITC had ample time to provide sufficient identification of its alleged trade secrets. In fact, ITC had plenty of time in the nearly four years it waited to bring this lawsuit—longer than the statute of limitations for some of its claims—to determine what its actual trade secret rights are. But ITC did not do so. When asked the first discovery question in any trade secret case, i.e., "What are your trade secrets?," ITC's answer was a flippant, "Everything." All of their "source code, processes, and tools," despite the fact that public information demonstrates that ITC does not own significant portions of the IntelliCAD software.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

For the reasons explained in the Motion and this Reply, Gstar respectfully asks the Court to grant its motion to compel and its motion for a protective order.

## II. ARGUMENT

ITC should be compelled to identify its trade secrets with reasonable particularity before obtaining trade secret discovery from Gstar.

### A. Gstar only seeks identification of trade secrets that ITC claims to have *disclosed* to Gstar—information that is currently available to ITC.

As an initial matter, ITC continues to mischaracterize Gstar's position as seeking identification of trade secrets that were "misappropriated." *See* Plaintiff The IntelliCAD Consortium's Opp. to Def.'s Mot. to Compel and for Protective Order ("Opposition") (ECF 62) at 6 ("The ITC will not know which parts of the software code were stolen by Gstar until the audit laid out in Section 8 of the protective order and requested by the ITC pursuant to FRCP 34 takes place."); *id.* (observing that "ITC can only speculate which of the millions of lines of code Gstar misappropriated until the comparison audit is run"). But Gstar has made clear, on multiple occasions, that Gstar seeks identification of "all trade secrets that ITC claims to have disclosed to Gstar, rather than trade secrets that ITC claims that Gstar misappropriated." Gstar's Mot. to Compel Interrog. Responses and for a Protective Order ("Motion") (ECF 58) at 4 n.1; *id.* at 16 ("Gstar seeks that ITC identify only what portions of its source code are trade secrets that it *disclosed* to—rather than allegedly misappropriated by—Gstar") (emphasis in original); *see also* Markley Decl. (ECF 60) ¶ 6. As explained below, many of ITC's arguments stem from this mistaken characterization of Gstar's position and should therefore be rejected.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**B. Whether a party has sufficiently identified its trade secrets is a fact-intensive inquiry, and the legal authorities on which ITC relies are factually distinguishable.**

ITC cites several cases in support of its argument, but Gstar has already explained that those cases are factually distinguishable. *See* Mot. at 9-10, 16 (distinguishing the decisions in *Opal Labs, Inc.*, *Quaiz*, *St. Jude Med. S.C., Inc.*, and *Nike, Inc.* primarily because the plaintiffs in those cases either offered significantly more detail about their asserted trade secrets than ITC does here or had no way of knowing what information was taken). The little new legal authority that ITC offers is similarly distinguishable and does not assist ITC.

For example, ITC cites to a Nevada district court opinion in a trade secret misappropriation case where the alleged misappropriation occurred after the plaintiff's former employees were hired to assist with the development of the defendant's competing factory. *Glob. Advanced Metals USA, Inc. v. Kemet Blue Powder Corp.*, No. 3:11-CV-00793-RCJ, 2012 WL 3884939, at *6 (D. Nev. Sept. 6, 2012). The defendant sought a protective order to prevent the plaintiff from obtaining discovery of the defendant's trade secrets until the plaintiff had sufficiently identified "the trade secrets it alleged Defendant misappropriated." *Id.* at *6. A magistrate judge denied the defendant's request, and the district court affirmed that denial based on a deferential standard of review. The outcome in that case (and in the others cited by ITC) stems from the nature of the defendant's request (identification of "misappropriated" trade secrets) and the facts surrounding the alleged misappropriation (departure of former employees who allegedly took protected materials, making the trade secrets disclosed the same as the trade secrets misappropriated, neither of which the plaintiff could identify without discovery from the defendant). *See also Montgomery v. eTreppid Techs., LLC.*, No. 3:06CV0056PMPVPC, 2008 WL 2277118, at *10 (D. Nev. May 29, 2008) (concluding that a party "could not possibly identify its alleged trade secret [in source code] because the one person who could identify it was gone"); *Tripwire, Inc. v. UpGuard, Inc.*, No. 3:17-CV-114-YY, 2017 WL 8682354, at *2 (D. Or.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Nov. 13, 2017) (denying motion to compel where plaintiff had "no way of knowing what trade secrets have been misappropriated" by its former employees who were alleged to have stolen documents and customers from defendant, and where the plaintiff provided detailed information about its specific trade secrets in its complaint).

By contrast, here, ITC intentionally and knowingly disclosed its alleged trade secrets to Gstar (along with its other members). Therefore, ITC indisputably knows what trade secrets it has in the technology that it disclosed to Gstar, and ITC's contention that it cannot define its trade secrets with particularity before seeking discovery of Gstar's trade secrets should be rejected. *Compare Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998) (party alleging trade secret misappropriation who develops, sells, and holds intellectual property rights in a product failed to identify its trade secrets with sufficient particularity to allow the defense to prepare adequate rebuttal), *with Montgomery*, 2008 WL 2277118, at *10 (distinguishing the decision in *Imax* because, in that case, "Imax, or an employee of Imax whom Imax could consult, created the projector, and therefore the trade secret, it ought to be able to identify it").

### C. ITC's Opposition demonstrates its inability, or unwillingness, to engage on the specific facts of this case and the AutoCAD workalike industry that show that ITC owns far less than it claims.

In its Motion, Gstar explained why the unique facts of the AutoCAD workalike industry favor early identification by ITC of its alleged trade secrets. Mot. at 10–14. ITC does not refute these facts but calls them hearsay and argues that the Protective Order provisions will address Gstar's concerns. But engaging with the import of these facts shows that ITC's fallback to the Protective Order is misplaced.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**1. ITC fails to recognize the import of third-party ownership of portions of its code.**

ITC's response is a collection of distractions to avoid addressing the well-founded concerns raised by Gstar. Here are the points that ITC does not refute: GstarCAD and IntelliCAD are AutoCAD workalikes; they are both designed based on AutoCAD's ObjectARX specification; they both incorporate software from third-party Open Design Alliance; they both incorporate the third-party 3D ACIS Modeler software; they both use the third-party MFC Library with related tools to auto-generate source code; they both use the third-party COM technology with related tools to auto-generate source code; they both use the third-party VBA technology; and they both use the third-party OLE technology. ITC does not, and presumably cannot, refute these similarities between GstarCAD and IntelliCAD, nor does ITC deny that these similarities will result in significant, completely innocent, similarities between GstarCAD and IntelliCAD.

Even setting aside the third-party resources incorporated into IntelliCAD, Gstar raised the significant issue that it appears that the previous owners of IntelliCAD, and not ITC, own portions of the IntelliCAD source code. Mot. at 2. But ITC avoids this subject entirely. Opp. at 9. ITC criticizes this issue as "based largely on inadmissible hearsay" and makes a response "[w]ithout getting into the merits of such arguments." *Id.* But this is discovery; this is ***exactly*** the time to "get into the merits."[1] While ITC apparently views a duly-served interrogatory as not the time to get into the merits of whether ITC actually owns the IntelliCAD source code, ITC's

[1] Relatedly, ITC argues that Gstar's Motion seeks (prematurely) to require ITC to prove its case. *See* Opp. at 7-8. For example, ITC suggests that it is inappropriate to consider trade secret misappropriation case law that arose outside of a discovery dispute, such as in the context of a motion for a preliminary injunction or a motion for summary judgment. *Id.* This argument should be rejected; whether a plaintiff has adequately identified trade secrets at the merits stage is not, as ITC suggests, untethered from the level of specificity that is required during discovery. Because ITC's identification of its trade secrets will determine the scope of discovery, and ultimately the merits of ITC's claims and Gstar's defenses, ITC should be required to supplement its interrogatory responses to allow these processes to begin now instead of at the end of discovery.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

President, Mr. Lorenzo, had no issue discussing those details on one of the same blogs that ITC now criticizes as “inadmissible hearsay.”

> **Comments**
>
> You can follow this conversation by subscribing to the comment feed for this post.
>
> Ralph you stated that:
>
> *Now that the IntelliCAD Technical Consortium is over the huge, multi-year hurdle of rewriting IntelliCAD 7 (so as to remove all Microsoft-owned code found in IntelliCAD 6 and earlier),*
>
> *This is not the case. Our goal for IntelliCAD 7 was not to remove existing Visio/Microsoft code but to refactor our usage of the ODA libraries.*
>
> *Previously in IntelliCAD 6 we only used the ODA libraries for read/write of DWG files and we maintained our own internal database. This caused a lot of delays when porting to new ODA updates as it required us to make huge modifications to our core database code and did not allow us to properly handle custom objects.*
>
> *We redesigned IntelliCAD 7 to utilize ODA as our internal database so now we properly support custom objects, exposed a new C++ API, and greatly simplified our ODA updates. This effort took a lot of time and resources as all internal commands were refactored and this also completely changed our entire graphics engine.*
>
> *However, we still have a lot of Visio/Microsoft code in IntelliCAD as there are hundreds of man years of experience/work that would be senseless to rewrite.*
>
> *Posted by: Dave Lorenzo | May 07, 2014 at 11:19 AM*

Julia Markley Supp. Decl., (“Supp. Markley Decl.”), Ex. 1, Ralph Grabowski, *What’s Inside? IntelliCAD 8*, WORLDCAD ACCESS (April 29, 2014), http://web.archive.org/web/20140527134626/https://worldcadaccess.typepad.com/blog/2014/04/whats-inside-intellicad-8exclusive-coverage-now-that-the-intellicad-technical-consortium-is-over-the-huge-multi-year-hurdl.html (comment by Dave Lorenzo, May 7, 2014, 11:19 AM) (highlights added). In other words, IntelliCAD contained significant portions of code owned by third-party Microsoft, and ITC had no plans to ever remove it. At this point, Gstar knows more about what trade secrets ITC does and does not own from a single 2014 comment on a blog post than it does from ITC’s response to ten interrogatories.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**2. Contrary to ITC's allegations, the Protective Order does not address Gstar's right to discover information about ITC's alleged trade secrets.**

Besides conflating the purpose of a Protective Order with the purpose of the caselaw related to defining trade secrets early in a case, ITC's refrain that the Protective Order will address Gstar's concern is simply wrong, as demonstrated by ITC's own positions taken during negotiation and briefing on the three provisions that ITC cites.

ITC says that Gstar can figure out what ITC claims are its trade secrets by looking at the "Source Code Analysis Results Files" generated by ITC's expert, *see* Opp. at 8 (referencing Protective Order § 8.3(e)(6))), and by looking at any of those results files produced as secure electronic PDFs, *see id.* (referencing Protective Order § 8.3(f)). But in convincing the Court to allow production by "secure electronic PDFs" in § 8.3(f), ITC argued that there would be "thousands or even tens of thousands of pages" of such results files. ECF 41 at 8. And how are those results files generated? At ITC's insistence, the Court allowed ITC's expert to use her proprietary, non-commercially available tools, *see* Protective Order § 8.3(e)(3), such that Gstar will not have a right to inquire into how that tool works until after ITC's expert serves her opening report, Markley Supp. Decl., Ex. 2, Aug. 10, 2020 Hearing Tr. at 50:14–25. That is a month after fact discovery closes. ECF 36. When ITC's citations are pieced together, this is ITC's response to Gstar's inquiry into the fundamental question of what are ITC's trade secrets: Gstar can sift through tens of thousands of pages of code generated by ITC's expert's undisclosed personal analysis tool to find the answer, and if Gstar cannot find the answer or does not understand those tens of thousands of pages of code, then Gstar must wait to be heard until the middle of expert discovery.

ITC's reliance on Section 8.3(e)(1) of the Protective Order is similarly incorrect and misleading. That provision gives the receiving party the right to unilaterally decide whether to remove "any irrelevant portions" of the software prior to the comparison analysis. Protective



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Order § 8.3(e)(1). ITC highlights the unilateral nature of this provision in its Opposition: "Section 8.3(e)(1) of the protective order ***allows the ITC*** to remove irrelevant materials before the comparison, which means that ***the ITC could*** remove any portions . . . [.]" Opp. at 9 (emphasis added). ITC assures the Court that its unilateral right to remove irrelevant source code "eliminat[es] or reduc[es] Gstar's concern." *Id.* But at the beginning of the very same paragraph, ITC says that it wants to leave the third-party software intact for comparison, because that would somehow be probative of its claims. *Id.* at 8–9. ITC is speaking out of both sides of its mouth in the very same paragraph: ITC will leave all third-party software intact because that is probative, and ITC will remove the third-party software in order to address Gstar's concerns.[2]

None of ITC's references to the Protective Order resolve the issues raised in the Motion, and ITC's prior arguments demonstrate that it knows that to be the case.

### D. ITC has failed to respond to Gstar's arguments regarding the remaining interrogatories, which are deficient for multiple independent reasons and must be supplemented.

In its Motion, Gstar argued that ITC's responses to Interrogatories Nos. 3-7 and 9 are deficient for two separate and independent reasons: (1) they incorporate ITC's deficient response to Interrogatory No. 1, and (2) they lack sufficient detail responsive to the interrogatories, such as information regarding specific individuals who were involved in the creation or development of ITC's alleged trade secrets. In response, ITC summarily dismisses Gstar's first argument and

[2] ITC's reliance on § 8.3(e)(1) is disingenuous for another reason. During negotiation of the Protective Order, Gstar proposed language for that provision saying that the irrelevant source code that would be removed would include "***Open Design Alliance*** software, third-party open source software, any other third-party software, and any other portions of source code ***that the Producing Party and Receiving Party agree*** will not provide relevant information for the present litigation." Supp. Markley Decl. ¶ 4 (emphasis added). ITC objected, and would only agree to the unilateral version of that provision. *Id.* at ¶ 5 & Ex. 3 (July 24, 2020, 4:00 PM email from C. Berne explaining ITC's unwillingness to agree to removal of ODA or other irrelevant source code in advance). Yet ITC now suggests that it will benevolently exercise that unilateral right in a cooperative way to remove ODA and other third-party source code, which is precisely the requirement to which it refused to agree during negotiations of this very provision.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

does not address Gstar's second argument. This Court should therefore compel ITC to supplement its remaining interrogatory responses as requested by Gstar.

## III. CONCLUSION

Gstar respectfully requests that the Court grant its Motion.

DATED: December 8, 2020

**PERKINS COIE LLP**

By: */s/ Julia E. Markley*

**Julia E. Markley**, OSB No. 000791
JMarkley@perkinscoie.com
**Sasha Petrova**, OSB No. 154008
SPetrova@perkinscoie.com
**Kyle Ryan Canavera** (*Pro Hac Vice*)
KCanavera@perkinscoie.com
**William Matthew Pierce** (*Pro Hac Vice*)
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

*Attorneys for Defendant*
*Suzhou Gstarsoft Co., Ltd.*