**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**THE INTELLICAD TECHNOLOGY CONSORTIUM**,

Plaintiff,

v.

**SUZHOU GSTARSOFT CO. LTD**,

Defendant.

Case No. 3:19-cv-1963-SI

**FIRST AMENDED PROTECTIVE ORDER**

Craig R. Berne and Shawn M. Lindsay, HARRIS BERNE CHRISTENSEN LLP, 15350 SW Sequoia Parkway, Suite 250, Portland, OR 97224. Of Attorneys for Plaintiff.

Julia E. Markley and Sasha A. Petrova, PERKINS COIE LLP, 1120 NW Couch Street, 10th Floor, Portland, OR 97209; Kyle R. Canavera, PERKINS COIE LLP, 11988 El Camino Real, Suite 300, San Diego, CA 92130; William Matthew Pierce, PERKINS COIE LLP, 1900 16th Street, Suite 1400, Denver, CO 80202. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure and Local Rule ("LR") 26-4(a), the Court enters this Protective Order for good cause.

**1. PURPOSES AND LIMITATIONS**

Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public

disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the Parties petitioned the Court to enter a Protective Order. When the Parties have agreed upon specific text, the Court has adopted the Parties' agreed-upon provisions as proposed. When the Parties have disagreed, the Court, after considering the arguments of the Parties, has resolved the dispute as stated in this Order. The Parties have acknowledged that this Order does not confer blanket protection on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The Parties have further acknowledged, as set forth in Section 13.4, below, that this Protective Order does not entitle them to file confidential information under seal; LR 26-4(c) sets forth the procedures that must be followed and the standards that will be applied when a Party seeks permission from the Court to file material under seal.

**2. DEFINITIONS**

2.1 "Challenging Party" means a Party or Non-Party that challenges the designation of information or items under this Order.

2.2 "CONFIDENTIAL Information or Items" means information (regardless of how it is generated, stored, or maintained) or tangible things that qualify for protection under Rule 26(c) of the Federal Rules of Civil Procedure.

2.3 "Counsel" (without qualifier) means Outside Counsel of Record and House Counsel (as well as their support staff).

2.4 "Designating Party" means a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE".

2.5 "Disclosure or Discovery Material" means all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things) that are produced or generated in disclosures or responses to discovery in this matter.

2.6 "Expert" means a person with specialized knowledge or experience in a matter pertinent to the litigation who: (1) has been retained by a Party or its Counsel to serve as an expert witness or as a consultant in this action; (2) is not a past or current employee of a Party or of a Party's competitor; and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

2.7 "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Information or Items" means extremely sensitive "Confidential Information or Items," disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.8 "HIGHLY CONFIDENTIAL – SOURCE CODE Information or Items" means extremely sensitive "Confidential Information or Items" representing computer code and associated comments and formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.[1]

2.9 "House Counsel" means attorneys who are employees of a Party to this action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

[1] As stated in the Court's Opinion and Order dated December 21, 2020 (ECF 66), the ITC's President, Mr. Dave Lorenzo, may not have access to Gstar's revision history created on or after May 19, 2018.

2.10 "Non-Party" means any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.11 "Outside Counsel of Record" means any attorney who is not an employee of a Party to this action but is retained to represent or advise a Party to this action and who has appeared in this action on behalf of that Party or is affiliated with a law firm that has appeared on behalf of that Party. Outside Counsel of Record shall not include any person who has been or is involved in competitive decision-making on behalf of a Party to this action, regardless of whether that person is an employee of the Party. An attorney who would otherwise qualify as Outside Counsel of Record but who is involved in competitive decision-making on behalf of a Party to this action will be treated as House Counsel. Subject to a motion for reconsideration, the Court finds that Shawn M. Lindsay is Outside Counsel of Record to Plaintiff, The IntelliCAD Technology Consortium (the "ITC"), and he is not an employee of the ITC. The Court further finds, subject to a motion for reconsideration, that Mr. Lindsay does not make and has not made competitive decisions for the ITC. Instead, Mr. Lindsay has advised and continues to advise the ITC as to legal matters. Mr. Lindsay is not, has not been, and represents that he will not be involved in decisions as to pricing, marketing, application features, product design, budgeting, code development, or the like for the ITC. On that basis, the Court finds that Mr. Lindsay is Outside Counsel of Record and not House Counsel.

2.12 "Party" means any party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.13 "Producing Party" means a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.14 "Professional Vendors" mean persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.15 "Protected Material" means any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," or as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or as "HIGHLY CONFIDENTIAL – SOURCE CODE".

2.16 "Receiving Party" means a Party that receives Disclosure or Discovery Material from a Producing Party.

**3. SCOPE**

The protections conferred by this Order cover not only Protected Material (as defined above), but also: (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. The protections conferred by this Order, however, do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. Any use of Protected Material at trial shall be governed by a separate agreement or order.

**4. DURATION**

Even after the final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a

Court order otherwise directs. Final Disposition shall be deemed to be the later of: (1) dismissal of all claims and defenses in this action, with or without prejudice; and (2) final judgment after the completion and exhaustion of all appeals, re-hearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

**5. DESIGNATING PROTECTED MATERIAL**

5.1 Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. To the extent it is practical to do so, the Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify, so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection at all or do not qualify for the level of protection initially asserted, that Designating Party must promptly notify all other parties that it is withdrawing the mistaken designation.

5.2 Manner and Timing of Designations. Except as otherwise provided in this Order (see, e.g., second paragraph of Section 5.2(a) below), or as otherwise agreed upon by the Parties or ordered by the Court, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced. Designation in

conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" to each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted.

A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY". After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE") to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted.

(b) for testimony given in deposition or in other pretrial or trial proceedings,

that the Designating Party identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the level of protection being asserted. When it is impractical to identify separately each portion of testimony that is entitled to protection and it appears that substantial portions of the testimony may qualify for protection, the Designating Party may invoke on the record (before the deposition, hearing, or other proceeding is concluded) a right to have up to 21 days from receipt of the deposition transcript to identify the specific portions of the testimony as to which protection is sought and to specify the level of protection being asserted. Only those portions of the testimony that are appropriately designated for protection within the 21 days of receipt of the deposition transcript shall be covered by the provisions of this Protective Order. Alternatively, a Designating Party may specify, at the deposition or up to 21 days after receipt of the deposition transcript if that period is properly invoked, that the entire transcript shall be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE".

Parties shall give the other parties notice if they reasonably expect a deposition, hearing or other proceeding to include Protected Material so that the other parties can ensure that only authorized individuals who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) are present at those proceedings. The use of a document as an exhibit at a deposition shall not in any way affect its designation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL– ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE".

Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the title page shall be followed by a list

of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the Designating Party. The Designating Party shall inform the Court reporter of these requirements. Any transcript that is prepared before the expiration of a 21-day period for designation shall be treated during that period as if it had been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in its entirety unless otherwise agreed. After the expiration of that period, the transcript shall be treated only as actually designated.

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE". If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s) and specify the level of protection being asserted.

5.3 Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

**6. CHALLENGING CONFIDENTIALITY DESIGNATIONS**

6.1 Timing of Challenges. Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic

burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2 Meet and Confer. The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are insufficient) within seven days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3 Judicial Intervention. If the Parties cannot resolve a challenge without Court intervention, the Designating Party shall arrange a conference with the Court pursuant to LR 26-3(f). If, after conference with the Court, the dispute remains unresolved, the Designating Party shall file and serve a motion to retain confidentiality pursuant to LR 26-3 within 14 days of the conference with the Court. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements

imposed in the preceding paragraph. Failure by the Designating Party to make such a motion including the required declaration within 14 days shall automatically waive the confidentiality designation for each challenged designation. In addition, the Challenging Party may file a motion challenging a confidentiality designation at any time after the conference with the Court if there is good cause for doing so, including a challenge to the designation of a deposition transcript or any portions thereof. Any motion brought pursuant to this provision must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed by the preceding paragraph.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation by failing to file a motion to retain confidentiality as described above, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

**7. ACCESS TO AND USE OF PROTECTED MATERIAL**

7.1 Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of Section 14 below (FINAL DISPOSITION). Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the

persons authorized under this Order.

7.2 Disclosure of CONFIDENTIAL Information or Items. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d) the Court and its personnel;

(e) Court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f) during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the Court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the Court reporter and may not be disclosed to anyone except as permitted

under this Protective Order.

(g) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

7.3 Disclosure of HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY and HIGHLY CONFIDENTIAL – SOURCE CODE Information or Items. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

(b) Experts of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in Section 7.4(a), below, have been followed;

(c) the Court and its personnel;

(d) Court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); and

(e) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

7.4 Procedures for Approving or Objecting to Disclosure of HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE Information or Items to Experts.

(a) Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to Section 7.3(b) must first make a written request to the Designating Party that: (1) identifies the general categories of HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE information that the Receiving Party seeks permission to disclose to the Expert; (2) sets forth the full name of the Expert and the city and state of his or her primary residence; (3) attaches a copy of the Expert's current resume; (4) identifies the Expert's current employer(s); (5) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom the Expert has provided professional services, including in connection with a litigation, at any time during the preceding five years;[2] and (6) identifies (by name and number of the case, filing date, and location of Court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.

[2] If the Expert believes any of this information is subject to a confidentiality obligation to a third-party, then the Expert should provide whatever information the Expert believes can be disclosed without violating any confidentiality agreements, and the Party seeking to disclose to the Expert shall be available to meet and confer with the Designating Party regarding any such engagement.

(b) A Party that makes a request and provides the information specified in the preceding respective paragraphs may disclose the subject Protected Material to the identified Expert unless, within seven days of delivering the request, the Party receives a written objection from the Designating Party. Any such objection must set forth in detail the grounds on which it is based.

(c) A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice to voice dialogue) to try to resolve the matter by agreement within seven days of the written objection. If no agreement is reached, the Party seeking to make the disclosure to the Expert may proceed as provided in LR 26-3 seeking permission from the Court to do so. Any such motion must describe the circumstances with specificity, set forth in detail the reasons why the disclosure to the Expert is reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any additional means that could be used to reduce that risk. In addition, any such motion must be accompanied by a competent declaration describing the parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and setting forth the reasons advanced by the Designating Party for its refusal to approve the disclosure. In any such proceeding, the Party opposing disclosure to the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert.

(d) After the Requesting Party has identified its Expert to whom it wishes to disclose the Producing Party's HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE and the Producing Party either does not timely object, or the objection is resolved through the "meet and confer" process, or disclosure to that

Expert is allowed by the Court, the Requesting Party does not need to go through the process described above to show the Producing Party's "source code" to such Expert for the remainder of the case.

**8. SOURCE CODE**

8.1 To the extent production of source code becomes necessary in this case, a Producing Party may designate source code as "HIGHLY CONFIDENTIAL - SOURCE CODE" if it comprises or includes confidential, proprietary, or trade secret source code.

8.2 Protected Material designated as "HIGHLY CONFIDENTIAL – SOURCE CODE" shall be subject to all of the protections afforded to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information and may be disclosed only to the individuals to whom HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY information may be disclosed, as set forth in Sections 7.3 and 7.4.

8.3 Unless otherwise ordered by this Court, production of source code shall proceed as follows:

(a) Source Code Selection. The Producing Party shall make available for remote viewing by the Receiving Party the software repository or repositories for the Producing Party's applicable software program, but not the source code or other content of the files managed by the software repository. This viewing will be done via video conference and conducted in English. With the exception of metadata that includes dates when changes were made, what programs or files were changed, who made the changes, and any associated check-in comments, the software repository will be treated as "HIGHLY CONFIDENTIAL – SOURCE CODE" information and viewing thereof will be limited as described elsewhere herein. The Receiving Party may identify revisions of the software from the software repository for further analysis and the metadata mentioned above will be produced.[3]

---

[3] The ITC's President, Mr. Lorenzo, however, may not have access to Gstar's revision history created on or after May 19, 2018. *See* n.1, *supra*.

For the review of Suzhuo Gstarsoft Co., Ltd. ("Gstar") source code, the following provisions shall apply. Gstar will provide the software repository for its GstarCAD 8 software application on a computer in Gstar's Beijing office. Gstar will provide a room with appropriate videoconferencing equipment at the Portland office of its counsel (Perkins Coie LLP), from which representatives of Gstar and The IntelliCAD Technology Consortium ("ITC") may conduct the video conference provided by this subsection. The ITC will have identified one revision prior to this videoconference, and in this videoconference the ITC may identify up to three additional revisions of GstarCAD 8 for further analysis. The Parties will reasonably cooperate so that the video conference provided by this subsection can be conducted on a single day at a date and time agreed to by the Parties.

(b) Source Code Verification. With respect to Gstar as a Producing Party, Gstar will use the initial revision identified by the ITC to create an appropriate build environment on the Source Code Computer (as defined below). Gstar will build all four revisions selected by the ITC into executable programs on Gstar's computers in China. Gstar will provide to the ITC the build scripts, configuration options, build output (including all logs), and MD5 hash values for each file used in the build. Gstar will then transfer the source code and related revision histories for the four identified revisions to the Source Code Computer. Gstar will then build the four identified revisions on the Source Code Computer in the presence of the ITC's representatives that are allowed to view HIGHLY CONFIDENTIAL—SOURCE CODE MATERIAL. Gstar will complete these above steps within 14 days from the ITC identifying all four revisions. The parties recognize that not all of the non-production revisions (i.e., development revisions not released to customers) identified by the Receiving Party for further analysis will necessarily successfully build. To the extent that an identified revision successfully

builds into an executable program, the Producing Party will then execute a reasonable number of functions requested by the Receiving Party.

(c) Generation of Source Code Authentication Check Values. As part of the video conference of subsection (a), the Producing Party will generate an authentication check value for the software revisions identified by the Receiving Party for further analysis. This generation will be performed by the Producing Party generating an MD5 hash value for each of the software revisions and for each file within each such revision identified by the Receiving Party for further analysis. The Producing Party will immediately provide the MD5 hash values to the Receiving Party as part of the video conference of subsection (a). For avoidance of doubt, the performance of this subsection will be performed within full view of the Receiving Party as part of the video conference described in subsection (a).

For the review of Gstar source code, the following provisions will apply. ITC may request additional, reasonable authentication check values. To the extent that ITC requests authentication check values or other authentication information that identifies the structure of Gstar's software repository, however, the structure of Gstar's source code directories, the filenames of Gstar's source code, or any other information about Gstar's source code files other than a cryptographic hash value, that information will be treated as HIGHLY CONFIDENTIAL – SOURCE CODE information, and viewing thereof will be limited as described elsewhere herein. The Producing Party will provide a list of only cryptographic hash values to the Receiving Party in searchable PDF format, and that list will be treated as CONFIDENTIAL material.

(d) Provision of Source Code for Analysis. The Producing Party will make available for further inspection by the Receiving Party the software revisions identified by the

Receiving Party for further analysis. The Producing Party may visually monitor the activities of the Receiving Party's representatives during any source code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code. This does not allow visual inspection of representatives' work product or analysis, but rather is only to confirm that the representatives do not conduct any unauthorized recording, copying, or transmission.

The Producing Party will store the software revisions identified by the Receiving Party on one or more computers in the Portland and Los Angeles offices of Gstar's counsel (Perkins Coie LLP) ("Source Code Computer"). The Source Code Computer will have the following minimum requirements and equipment: (a) dual monitors; (b) 16 gigabytes of memory; (c) two hard drives with at least two terabytes of free space; (d) Windows 10 operating system; (e) English keyboard; (f) English system locale; and (g) CPU with 4-8 cores at 3 GHz or greater processing speed. Gstar will provide a room with a Source Code Computer at the Portland office and one of the Los Angeles offices of its counsel (Perkins Coie LLP) from which the parties' representatives may conduct their further analysis of the source code. For the avoidance of doubt, the source code provided pursuant to this subsection will be treated as HIGHLY CONFIDENTIAL – SOURCE CODE information, and viewing thereof will be limited as described elsewhere herein. When not in use, the source code will be stored in an encrypted container file on the Source Code Computer.

(e) Source Code Analysis. The Receiving Party may analyze the source code made available by the Producing Party for inspection pursuant to subsection (d).

(1) As part of the source code analysis, the Receiving Party will remove any irrelevant portions of the software revisions identified by the Receiving Party for further analysis. This removal will be performed by the Receiving Party. A record of exactly what was excluded by the Receiving Party will be created and provided to the Producing Party, including the specific software product, the version, and the supplier of the software.

(2) The Receiving Party's representative may install any of the Receiving Party's source code on the Source Code Computer that the Receiving Party's

representative intends to use for the further analysis.

(3) The Receiving Party representative may install source code analysis tools selected by the Receiving Party representative ("Source Code Analysis Tools") on the Source Code Computer. Because activation of some tool licenses requires Internet access, the tools will be installed on the Source Code Computer before placing any of Gstar's source code on the Source Code Computer.

(4) The Receiving Party's representatives may install a tool necessary to generate an authentication check value for source code provided on the Source Code Computer in order to verify the authenticity of the source code provided thereon. See subsection (c) above.

(5) The Receiving Party's representatives may conduct source code analysis on the Source Code Computer as the Receiving Party's representatives determine appropriate. The Receiving Party's representatives, however, will not perform any network access (e.g., Internet access) and the Source Code Computer will be disconnected from the Internet. Further, other than the materials described in this subsection (e), the Receiving Party's representatives will not install any further materials on the Source Code Computer without prior notice to the Producing Party.

(6) As part of the source code analysis performed by the Receiving Party's representatives, the Receiving Party's representatives may generate electronic documents (e.g., PDF files) containing results of the source code analysis ("Source Code Analysis Result Files"). Without limitation, the Source Code Analysis Result Files may include comparison files generated by the Source Code Analysis Tools. The Source Code Analysis Result Files will be treated as HIGHLY CONFIDENTIAL – SOURCE CODE information and viewing thereof will be limited as described elsewhere herein.

(7) Except as provided in subsection (f) below, upon final adjudication of the present lawsuit, all source code files and analysis result files, the Source Code Analysis Result Files, and any other materials identified by either party that are stored on the Source Code Computer will be permanently destroyed using a secure means agreed to by the parties. Further, the Receiving Party's representative may request deactivation of the licenses for the Source Code Analysis Tools and the parties agree to reasonably comply with such requests.

(f) Provision of Source Code Analysis Results. The Producing Party will make available any source code analysis results generated from Receiving Party's analysis pursuant to subsection (e). The Receiving Party may request paper or secure electronic PDF copies of limited portions of the source code or Source Code Analysis Result Files that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper or secure electronic PDF copies for the purposes of reviewing the source code other than electronically as set forth in subsection (e) in the first instance. The Producing Party shall provide all such source code and/or Source Code Analysis Result Files in paper or secure electronic PDF form, including bates numbers and the label "HIGHLY CONFIDENTIAL - SOURCE CODE". The Producing Party may challenge the amount of source code and/or Source Code Analysis Results Files requested in hard copy or secure electronic PDF copy form pursuant to the dispute resolution procedure and timeframes set forth in Section 5 whereby the Producing Party is the "Challenging Party" and the Receiving Party is the "Designating Party" for purposes of dispute resolution.

(1) The Receiving Party will generate Source Code Analysis Result Files on the Source Code Computer. The Receiving Party shall be allowed to create a backup of any Source Code Analysis Result Files on the internal disk of the Source Code Computer. The

Receiving Party shall not copy, remove, or otherwise transfer any portion of the Source Code Analysis Result Files onto any other recordable media or recordable device.

(2) Source code analysis results will be produced in searchable format, Bates-stamped on each "page," and will have marginal line numbers added to each line of code. A header page or line will be added that shows the full file path and file name of the file from which the source code or analysis results are being printed. The pages should also be marked with the correct confidentiality designation. The Bates numbering system should indicate who is the Producing Party and that the production is coming from the Source Code Computer, per the naming convention agreed upon by the parties.

(g) Re-designating Source Code Analysis Results. The Receiving Party may request that specific source code analysis results generated from the Receiving Party's analysis pursuant to subsection (e) be re-designated from HIGHLY CONFIDENTIAL - SOURCE CODE to CONFIDENTIAL pursuant to the dispute resolution procedure and timeframes set forth in Section 6. In making such a request, the Receiving Party shall bear the burden of demonstrating that any portion of source code provided by the Producing Party that is contained in the source code analysis results is in fact the intellectual property owned by the Receiving Party.

8.4 The Receiving Party shall maintain a record of any individual who has inspected any portion of the source code in electronic or paper form. The Receiving Party shall maintain all paper or secure electronic PDF copies of any printed or secure electronic PDF portions of the source code in a secured, locked area. The Receiving Party shall not create any electronic or other images of the paper or secure electronic PDF copies and shall not convert any of the information contained in the paper or secure electronic PDF copies into any other electronic format. The Receiving Party shall only make additional paper or secure electronic PDF copies if

such additional copies are: (1) necessary to prepare court filings, pleadings, or other papers (including a testifying Expert's expert report); (2) necessary for deposition; or (3) otherwise necessary for the preparation of its case. Any paper or secure electronic PDF copies used during a deposition shall be retrieved by the Producing Party at the end of each day and must not be given to or left with a court reporter or any other unauthorized individual. A "secure electronic PDF" is a PDF file protected by encryption using a passphrase of at least 16 alphanumeric characters. The Receiving Party shall not: disable the encryption of the secure electronic PDF copies; change the passphrase used to encrypt the secure electronic PDF copies; or store the secure electronic PDF copies in an unencrypted form.

## 9. PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

9.1 If a Party is served with a subpoena or a Court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" that Party must:

(a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or Court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Protective Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

9.2 If the Designating Party timely seeks a protective order, the Party served with the subpoena or Court order shall not produce any information designated in this action as

"CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" before a determination by the Court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that Court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another Court.

**10. A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION**

10.1 The terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE". Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

10.2 In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

(a) promptly notify in writing the Requesting Party and the Non-Party that some or all information requested is subject to a confidentiality agreement with a Non-Party;

(b) promptly provide the Non-Party with a copy of the Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(c) make the information requested available for inspection by the Non-Party.

10.3 If the Non-Party fails to object or seek a protective order from this Court within 14 days of receiving the notice and accompanying information, the Receiving Party may

produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by this Court. Absent this Court's order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this Court of its Protected Material.

**11. UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Protective Order, the Receiving Party must immediately: (a) notify in writing the Designating Party of the unauthorized disclosures; (b) use its best efforts to retrieve all unauthorized copies of the Protected Material; (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order; and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

**12. INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL**

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in a stipulation submitted to the Court.

**13. MISCELLANEOUS**

13.1 Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

13.2 Right to Assert Other Objections. By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

13.3 Export Control. Disclosure of Protected Material shall be subject to all applicable United States laws and regulations relating to the export of technical data contained in such Protected Material, including the release of such technical data to foreign persons or nationals in the United States or elsewhere. The Producing Party shall be responsible for identifying any such controlled technical data, and the Receiving Party shall take measures necessary to ensure compliance.

13.4 Filing Protected Material. Without written permission from the Designating Party or a Court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material. A Party that seeks to file under seal any Protected Material must comply with LR 26-4.

**14. FINAL DISPOSITION**

Within 60 days after the final disposition of this action, as defined in Section 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts,

legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

**IT IS SO ORDERED.**

DATED this 23rd day of December, 2020.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge

EXHIBIT A

ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, ______________________________ [*print or type full name*], of _________________ [*print or type full address*], declare under penalty of perjury that I have read in its entirety and understand the Protective Order that was issued by the United States District Court for the District of Oregon on __________ [*date*] in the case of *The Intellicad Technology Consortium v. Suzhou Gstarsoft Co. Ltd.*, No. 3:19-cv-01963-SI. I agree to comply with and to be bound by all the terms of this Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment, including contempt of court. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the District of Oregon for the purpose of enforcing the terms of this Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint __________________________ [print or type full name] of ________________________________________ [print or type full address and telephone number] as my Oregon agent for service of process in connection with this action or any proceedings related to enforcement of this Protective Order.

Date: ________________________________

City and State where sworn and signed: ________________________________

Printed name: ______________________________
[printed name]

Signature: __________________________________
[signature]